## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ALABAMA

In re:  **KIP DWAYNE RANEY**
        **SSN: xxx-xx-2591**
        **TAMMY PYLANT RANEY**
        **SSN: xxx-xx-8388**

**CASE NO. 22-81109-CRJ7**

**Chapter 7**

**THE MOVING PARTY SEEKS RELIEF FROM THE AUTOMATIC STAY. UNLESS A RESPONSE IS FILED AND SERVED UPON THE MOVING PARTY ON OR BEFORE AUGUST 2, 2022, BY ANY INTERESTED PARTY, THE MOTION MAY BE GRANTED BY THE COURT WITHOUT FURTHER NOTICE OR HEARING.**

## MOTION FOR RELIEF FROM AUTOMATIC STAY

REDSTONE FEDERAL CREDIT UNION, a creditor in the above case, by and through its attorney, hereby files this MOTION FOR RELIEF FROM THE AUTOMATIC STAY. The Creditor would show as follows:

1. The Debtors were at the time of filing their petition, and still are, justly and truly indebted to the Creditor. The Debtors presently owe the Creditor the sum of $72,963.21. The Debtors have declined to reaffirm on all of their Credit Union indebtedness.

2. The consideration for these debts were obligations for the sums shown on the

   a) Note, Disclosure Statement, and Security Agreement, (Exhibit A) and dated June 24, 2019, in the original amount financed of $14,900.00, plus interest at 5.190% from June 30, 2022 CROSS-COLLATERIZATION; and

   b) Note, Disclosure Statement and Security Agreement, (Exhibit B) and dated July 26, 2019, in the original amount financed of $23,650.00, plus interest at 4.300% from June 30, 2022 CROSS-COLLATERALIZATION; and

   c) Note, Disclosure Statement, Security Agreement, and Collateral Insurance Agreement, (Exhibit C) and dated September 16, 2017, in the original amount financed of $29,636.67, plus interest at 3.850% from June 30, 2022 CROSS-COLLATERALIZATION; and

   d) Note, Disclosure Statement and Security Agreement, (Exhibit D) and dated October 19, 2018, in the original amount financed of $48,718.49, plus interest at 11.000,% from June 30, 2022. CROSS-COLLATERALIZATION

The following properties are security for said debts:

**2016 Toyota Camry, VIN # 4T1BF1FK1GU593291**
**2015 Toyota Tundra, VIN # 5TFRY5F10FX176527**
**2017 Toyota Tacoma, VIN # 5TFAZ5CN4HX045556**

3. There are no setoffs or counterclaims to said debt, and it is free from any charge forbidden by applicable law.

4. Redstone Federal Credit Union objects and requests a hearing to any claim of the Debtors seeking to exempt any of the property in which Redstone Federal Credit Union has a security interest.

5. The Debtors have had a reasonable opportunity to redeem said property and have not done so.

6. The Debtors do not have equity in said property and it is not necessary to an effective reorganization.

7. Redstone Federal Credit Union is first lienholder on the properties securing the debts. Copies of the Certificates of Title are attached hereto as Exhibit E collectively.

8. This is a Chapter 7 case. The debtors either know, should know, or have been informed by Debtors' counsel of the rules of this Bankruptcy Court and the potential penalties for non-compliance. Therefore, the Creditor requests this Court waive the fourteen day "stay" in accordance with Fed. R. Bankr. P. 4001(a)(3).

Wherefore, REDSTONE Federal Credit Union prays for an order granting relief from the Section 362 stay, including relief to establish a deficiency under applicable state law, and directing Debtors to surrender possession of said property to Redstone Federal Credit Union. Your movant prays for such other, further and different relief as this Court deems it entitled.

C. HOWARD GRISHAM
GRISHAM CUMMINS, LLC
Attorney for Redstone Federal Credit Union
Post Office Box 5585
Huntsville, AL 35814-5585
Phone: 256-837-5100
Fax: 256-895-9654

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the Motion For Relief From Automatic Stay on the following, via U.S. Mail, postage prepaid, on July 11, 2022:

the attorney for the Debtors:
Angela Stewart Ary
Heard, Ary & Dauro, LLC
303 Williams Avenue SW
Park Plaza Suite 921
Huntsville, AL 35801

the Debtors:
Kip Dwayne Raney
Tammy Pylant Raney
110 Christopher Circle
Athens, AL 35611

the Trustee:
Tazewell Shepard
Tazewell Shepard, Trustee
P.O. Box 19045
Huntsville, AL 35804

ALL CREDITORS LISTED ON THE
ATTACHED CREDITOR MATRIX

_____
C. Howard Grisham

# EXHIBIT A

# REDSTONE FEDERAL CREDIT UNION
## Note, Disclosure Statement and Security Agreement

| MEMBER NAME(S)/ADDRESS(ES) | Date | In this Note, the words Credit Union and Us mean Redstone Federal |
|---|---|---|
| DEWAYNE RANEY, KIP DWAYNE RANEY | 6/24/2019 | Credit Union and anyone to whom We transfer Our rights under the |
| 808 N BEATY STREET | Loan Account Number | terms and conditions of this Agreement. The words I, My, You, Your |
| ATHENS, AL 35611 | XXXXXXXX327 | and Your(s) mean any person signing this Note. |

### FEDERAL TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments |
|---|---|---|---|
| The cost of Your credit as a yearly rate | The dollar amount the credit will cost You if You pay as scheduled. | The amount of credit provided to You or on Your behalf | The amount You will have paid when You have made all payments as scheduled |
| 5.190 % | $2,673.66 (e) | $14,900.00 | $20,040.38 (e) |

| YOUR PAYMENT SCHEDULE WILL BE: | Number of Payments | Amount of Payments | When Payments Are Due | NO PENALTY FOR EARLY PAYOFF | Fixing Fees | MEANS (e) AN ESTIMATE |
|---|---|---|---|---|---|---|
| | 71 | $278.35 | MONTHLY Beginning On | | $0.00 | |
| | Final Payment | $277.53 | 8/23/2019 (e) | | | |

☑ Your loan is a FIXED Rate loan for the life of the loan.

☐ Your loan is a VARIABLE Rate loan. The Annual Percentage Rate will be determined by a loan rate index plus an _____ % margin and is subject to change. The Annual Percentage Rate and Daily Periodic Rate may increase or decrease as the index changes. The value of Your index will be subject to change every three (3) calendar months from the calendar month of this Agreement on the first day of that month. Your Annual Percentage Rate will be adjusted based upon the market index and margin on the fifth (5th) day of the month beginning four (4) calendar months after the calendar month of this Agreement and on the fifth (5th) day of every third (3rd) calendar month thereafter for the term of this Agreement. The index is the weekly average yield (percent per annum) of one-year US Government Securities on actively traded non-inflation-indexed issues adjusted to constant maturities as published in the Federal Reserve's weekly H.15 release. The current index is the most recent index available as of the first Friday of the calendar month just prior to the calendar month of this Note.

☐ Your loan is a Share (Savings) Secured Variable Rate Loan. The Annual Percentage Rate on a loan advance that is secured by a Share Account (Savings) is established prior to or at the time of the advance and is disclosed above and is based on the dividend rate on the Share Account (Savings) that is pledged plus a 2.00% margin or 3.00%, whichever is higher. The index is the current dividend rate for the Shares Account (Savings) as approved by the Board of Directors at the time of the loan advance. The Share Account (Savings) dividend rate is subject to change every calendar month on the first (1st) day of that month. Periodically, your Annual Percentage Rate will be adjusted based upon the new dividend rate plus the agreed upon margin or 3.00%, whichever is higher. Your initial change will occur on the fifth (5th) day of the fourth (4th) calendar month after the calendar month of this Agreement. After the initial change, any subsequent changes will take place on the fifth (5th) day of every third (3rd) calendar month for the term of this Agreement.

☐ With regard to either variable rate loan, the ANNUAL PERCENTAGE RATE shall not be adjusted higher than 18% or the maximum Annual Percentage Rate permissible by law whichever is less, nor decrease below 5.95% or 3% on Share (Savings) Secured loans over the lifetime of the loan; nor shall any adjustments of the ANNUAL PERCENTAGE RATE at any given change exceed 3% in any twelve (12) calendar month period. An increase of the Annual Percentage Rate will usually result in more payments of the same amount, and in more interest paid over the estimated term of this loan advance. For example: If You had borrowed $ 15,000.00 for 72 months at an ANNUAL PERCENTAGE RATE of 11%, You will have nine (9) additional payments to make if the ANNUAL PERCENTAGE RATE increased the maximum 3% on the first adjustment date.

Late Charge: If a payment is late, You will be charged 5% of the amount of any installment, which is late by 10 days or more, but not less than $5 and not more than $100

Security: You are giving a purchase money security interest in the goods or property being purchased, unless the following box is checked. ☐ (brief description of other property already owned by borrower)

See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, prepayment refunds and penalties, and security interest.

### COLLATERAL INSURANCE AGREEMENT

You understand that You are required to maintain comprehensive and collision coverage on the above collateral with a maximum deductible of $500. Failure to maintain coverage may result in added insurance premiums to Your loan in order to protect the security interest of the Credit Union. See Page 3 for additional Collateral Insurance provisions.

PROMISE TO PAY: You agree to be bound by the terms of this Note and Personal Property Security Agreement on the reverse side and Collateral Insurance Agreement described above and continued on Page 3. You promise to pay all money loaned to You under this Agreement plus interest on the unpaid balance at the Annual Percentage Rate described above. If more than one person signs below, except for any person who signs as owner of collateral, each will be responsible for repaying the loan in full (this means being jointly and severally liable). If You are not a Borrower but an Owner of the collateral for this loan, sign below and check the Owner of Collateral box. By doing so You agree only to the terms of the Personal Property Security Agreement, including the cross-collateralization and future advances provisions.

### CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

| X signed by: [signature] | DATE | CO-BORROWER X [signature] □ CO-SIGNER □ OWNER OF COLLATERAL (other than a borrower) | DATE |
|---|---|---|---|
| CO-BORROWER X □ CO-SIGNER □ OWNER OF COLLATERAL (other than a borrower) F954E16203D549A | 6/24/2019 | SIGNATURES VERIFIED BY RFCU EMPLOYEE / NOTARY 4CA7268CD8L9440 | 6/24/2019 |
| | DATE | Tangela Suggs (SEAL) | 6/24/2019 |

### APPLICATION FOR GROUP CREDIT INSURANCE - ALABAMA

| CREDIT LIFE INSURANCE | | CREDIT DISABILITY INSURANCE (Primary Applicant Only) | | |
|---|---|---|---|---|
| GROUP POLICY NUMBER 29301-G, 29303-G | INSURANCE MAXIMUM (PER INDEBTEDNESS) $75,000 | GROUP POLICY NUMBER 29302-G, 29304-G | MAXIMUM MONTHLY DISABILITY BENEFIT $750.00 | WAITING PERIOD 30 Days |
| MAXIMUM LOAN REPAYMENT PERIOD 180 MONTHS | | MAXIMUM LOAN REPAYMENT PERIOD 180 Months | MAXIMUM AGGREGATE DISABILITY BENEFIT (PER INDEBTEDNESS) $75,000 | RETROACTIVE BENEFIT ☑ YES ☐ NO |
| TERM OF INSURANCE 180 Months | TERMINATION DATE OF INSURANCE | TERM OF INSURANCE 180 MONTHS | TERMINATION DATE OF INSURANCE | CRITICAL PERIOD COVERAGE ☐ YES ☑ NO |

I (we) are applying for the credit insurance coverage(s) selected below and agree to pay the required premiums. I (we) understand that fees may be paid by the insurer in connection with this coverage to the sponsor of this plan and/or its affiliates or designates. I (we) understand that the purchase of this insurance is voluntary and not required in order to obtain credit, and that I (we) may terminate it at any time. I (we) understand that if Critical Period Disability Insurance Coverage is indicated above, a MAXIMUM of 12 MONTHLY DISABILITY BENEFITS ARE PAYABLE PER CLAIM OCCURRENCE. I (we) also agree that:

1. I am eligible for life insurance if I am presently under age 70 and my loan is repayable within the maximum loan repayment period shown above. In no event is life insurance coverage to remain in force beyond the date you reach age 70. Please read the "When does your insurance terminate?" provision.
2. If joint life insurance is selected, we are eligible if the older applicant is presently under age 70 and our loan is repayable within the maximum loan repayment period shown above. We must be jointly and individually liable under the loan. Co-signers or guarantors are not eligible for insurance. In no event is joint life insurance coverage to remain in force beyond the date the older of the two of you reaches age 70. Please read the "When does your insurance terminate?" provision.
3. I am eligible for disability insurance if I am presently under age 66 and my loan is repayable within the maximum loan repayment period shown above. I also must be presently working outside the home for wages or profit for 30 hours or more per week and have been so working for 30 days or more immediately prior to this date. In no event is disability insurance coverage to remain in force beyond the date you reach age 66. Please read the "When does your insurance terminate?" provision.
4. A person signing this application, as co-applicant is not eligible for single disability insurance.

The following question must be answered to determine my (our) eligibility for insurance.

| PRIMARY APPLICANT | CO-APPLICANT (JOINT LIFE INSURANCE ONLY) | During the last two years have you been advised of or treated for cancer, heart attack or coronary artery disease, stroke, cirrhosis, or Acquired Immune Deficiency Syndrome (AIDS)? |
|---|---|---|
| ☐ Yes ☐ No | ☐ Yes ☐ No | |

My (our) answer to the above question is true to the best of my (our) knowledge and belief. If any co-applicant or I answer "Yes" to this question, we understand that the person answering "Yes" is not eligible for insurance and will not be insured.

The effective date of my (our) insurance will be the date of this application, the date the eligible loan is disbursed, or the date the note evidencing the loan is signed, whichever date is later.

### THIS INSURANCE CONTAINS LIMITATIONS/EXCLUSIONS PERTAINING TO BENEFITS PAYABLE.

COVERAGE REQUESTED *(OPEN END MONTHLY PREMIUM PER $100.00 OF OUTSTANDING LOAN BALANCE)

| ☐ Yes ☐ No  Single Life 12.3¢* | ☐ Yes ☐ No  Joint Life 18.5¢*  $1,140.88 | ☐ Yes ☐ No  Credit Disability 21.5¢*  $1,325.84 |
|---|---|---|

| APPLICANT'S SIGNATURE X [signature] | DATE 6/24/2019 | CO-APPLICANT'S SIGNATURE (Joint Life Only) X [signature] | DATE 6/24/2019 | CS OPERATOR Tangela Suggs |
|---|---|---|---|---|

Case 22-81109-CRJ7   Doc 14   Filed 07/12/22   Entered 07/12/22 08:55:36   Desc Main Document    Page 5 of 24

# REDSTONE FEDERAL CREDIT UNION  *Note, Disclosure Statement and Security Agreement*

| MEMBER NAME(S) | Date | Loan Account Number |
|---|---|---|
| DEWAYNE RANEY | 6/24/2019 | 327 |

## ITEMIZATION OF AMOUNT FINANCED

| Amount | Paid To | Amount | Paid To | Amount | Paid To |
|---|---|---|---|---|---|
| 14,900.00 | BIRMINGHAM LUXURY MOT | | | | |

## PERSONAL PROPERTY SECURITY AGREEMENT

In addition to any shares (funds) you have on deposit with Us, you offer the following property to secure the above loan and also unless the collateral is a household good as defined in 12 C.F.R. Section 227.12 (d), the collateral securing this debt also secures all other debts now or hereafter owed by any party executing this Note to the Credit Union, including all debts incurred by credit card, except that this collateral shall not secure any loan that is secured by the debtor's principal residence.

Collateral   2016 TOYOTA CAMRY 4T1BF1FK1GU593291

Description.

It is further agreed that this instrument or a copy thereof, shall serve as a financing statement under the provisions of the Uniform Commercial Code, and that the signature of the parties on page 1 of this Note shall constitute the signing of such financing statement.

## ADDITIONAL PROVISIONS

**You further agree (continued from the face of note)**

**Payment Schedule:** You promise to repay the money loaned to You according to the payment schedule disclosed in the Truth in Lending Disclosure Statement on the reverse side. You understand and acknowledge that each payment is applied in the following order late charges, finance charges, and any unpaid principal balance due.

**Prepayment or Irregular Payments:** Though You need only pay the fixed installments: You understand You have the right to repay Your entire loan at any time without penalty. You also understand You will only be charged interest to the date You repay Your entire loan. You may make larger payments without penalty and may reduce the total amount of interest You will pay. Any partial payment of Your loan will not delay Your next scheduled due date(s). You understand any payment that (a) delays or (b) accelerates the reduction of Your loan balance will (a) increase or (b) decrease Your interest charge. The net effect of Your early and late payments, plus any changes caused by Your loan being a variable rate loan, if applicable, will be taken into account in determining the amount of the final payment due.

**Last Payment:** You give the Credit Union Your permission to deposit the balance of Your last payment, if any, to Your share account.

**Security Interest:** You understand and acknowledge that to protect Us, you give Us a security interest under the Uniform Commercial Code as adopted or modified by the laws of the lender's principal place of business in the property (the security) described on the reverse side and above. Unless the collateral is a household good as defined in 12 C.F.R. Section 227.12(d), the collateral securing this debt also secures all other debts now or hereafter owed to the Credit Union, including all debts incurred by credit card, except that this collateral shall not secure any loan that is secured by the debtor's principal residence.

**Status of Secured Property:** You promise that You own the security and that there are no liens or any other claims against the security other than the Credit Union's. You agree not to sell, lease or transfer the security or pledge it as security to anyone else, until the loan has been paid in full; to take good care of the security and to pay all taxes and liens upon it; to obtain written permission from the Credit Union before making major alterations; to perform all acts which the Credit Union determines are necessary to make its security interest enforceable; not to use the security for any unlawful purposes; to allow the Credit Union to examine and inspect the security at reasonable times; and to pay all costs of protecting the security including reasonable attorney's fees. You will not move any collateral outside the state in which You reside without prior written Credit Union approval, unless You are moving under military orders and notify Us in advance of the new address. You understand and acknowledge that You will be in default if You fail to keep any of Your promises under this Personal Property Security Agreement, including, but not limited to, Your promise to protect the enforceability of Our security interest.

**Filing fees and other charges:** You agree to pay all taxes and fees prescribed by law for determining the existence of or for perfecting any security interest of the Credit Union granted under the Note, Disclosure Statement and Security Agreement. See the Current Fee Schedule for other applicable charges.

**Delay in Enforcement:** The Credit Union can delay enforcing any of its rights under this Agreement any number of times without losing them. You are required to perform strictly under the terms of this Agreement.

**Governing Law:** It is expressly understood and agreed that the laws of the State of Alabama, except as preempted by the laws of the United States, shall govern this Note, Disclosure Statement and Security Agreement in all respects, including, but not limited to, interpretation, execution, validity, payment, notice, demand, protest, damage for non-payment and collection.

**Preservation of Agreement Provisions:** If any term, condition or provision of this Agreement is determined to be unenforceable only that provision shall be considered to be deleted from this Agreement, and all other terms, conditions and provisions will continue in force until the loan balance is paid in full.

**Power of Attorney:** You appoint the Credit Union Attorney-in-Fact to transfer title on any titled property that is collateral for Your loan upon approval by the Credit Union.

**Copy Received:** You acknowledge receipt of a copy of this Note, Disclosure Statement and Security Agreement; and accept and agree to all of its terms as indicated by Your signature on the reverse side.

**Events of Default:** You will be in default under this Note upon the occurrence of any of the following events, circumstances or occurrences: 1) If You fail to make a payment of principal and/or interest required under this Note by its due date; 2) Your failure to comply with any other terms, covenants or conditions of this Note, any separate security or assignment instrument which secures this Note, or any other agreement (including a

**Events of Default (con't):** loan) You may have with Us at any time; 3) If any warranty or representation or any information in Your application or any financial statements made or submitted to Us by you or on Your behalf in connection with this Note or to induce Us to make this loan proves to be false, misleading or incomplete in any material respect when made or furnished; 4) If You or any endorser, guarantor, co-signer or surety for You in connection with this Note (hereinafter termed "Surety") should die or become insolvent or generally unable to meet Your or its obligations as they become due, 5) If a petition should be filed or other proceedings should be started under the Federal Bankruptcy Code or any State insolvency statute by or against You or any Surety; 6) If a judgment or tax lien should be filed against You or any Surety; 7) If a Receiver should be appointed for You or any Surety; 8) If a writ or order of attachment, levy or garnishment should be issued or any proceeding should be started against You or any Surety or any of Yours or its property, assets or income, to include anyone starting a suit or proceeding to seize any of Your or Surety's funds on deposit with Us; 9) If You permit any other lien holder to gain priority over the lien or security interest of security instrument(s) which secures this Note (if any), except for any prior security interest disclosed in writing to Us that is outstanding when the Credit Union records Your security interest to secure this Note; 10) If You receive advances under any prior lien instrument beyond advances acknowledged by Us prior to recording of the security instrument(s) which secures this Note (if any); 11) If You should sell, transfer, convey or encumber any portion of or any interest in any collateral securing this Note without the Credit Union's prior written consent; 12) If You fail to make a payment or perform all of Your obligations under any instrument or other obligation secured by a security interest which has priority over the lien or security interest created by the security instruments which secures this Note (if any); 13) With regard to a Share (Savings) Secured Variable Rate Loan  your failure to maintain a pledged Share (Savings) Account during the entire time any balance on this Note is outstanding; or 14) If the Credit Union should consider itself as to any debts due under this Note unsafe or not completely secure, or if it should believe, in good faith, that the prospect of Your payment or other performance under this Note is impaired or that the condition or value of the collateral (if any) which secures this Note has significantly deteriorated.

**Entire Balance Due:** If You are in default in any of the above ways, all of Your obligations to Us under this Note will immediately be due without Us giving You any advance notice. If any payment on Your debt under this Note is accepted after the Credit Union has demanded payment of the entire unpaid balance due or after the Credit Union has sued You, this won't be considered a waiver or forgiveness of any default in payments or any other default on Your part. Instead, the Credit Union will just apply any such payment to Your unpaid balance.

**Remedies on Default - Sale of Collateral:** If this Note is secured, and You do default on Your obligations under the Note, the Credit Union will have all of the rights and remedies provided by law and of a Secured Party under the Alabama Uniform Commercial Code and additionally, the specific rights: (1) To foreclose on its security interests and/or enforce its rights concerning the collateral securing this loan as provided in any Security Instrument(s) You have signed. (2) If the Credit Union sells the Collateral, the sale proceeds will be applied in the following order: (a) To all of the Credit Union's expenses in connection with Us taking possession, storing, preparing for sale and selling of the Collateral, including its reasonable attorneys' fees; (b) To the costs of terminating any claims against the Collateral that have priority over the Credit Union's security interests; and then (c) To the unpaid balance of what You owe on this Note or any other debt cross-collateralized herein. Any money left over will be paid to You or any other party You know of that has a security interest in the Collateral. If the sale proceeds are less than the total You owe Us, You agree to pay the difference, including interest on the principal amount at the Annual Percentage Rate provided for in this Note or at the adjusted rate if this is a variable rate loan until paid in full.

**Lien on Shares:** If You are in default, the Credit Union may apply all shares and/or deposits (except IRA and Keogh Accounts) then on deposit needed by the Credit Union to repay Your loan, in accordance with the Federal Credit Union Act or applicable State law.

**Acceleration:** If You are in default, the Credit Union may demand payment of the unpaid balance, interest charges, late charges and collection costs, if any, as provided in this Note. You understand that interest will continue to accrue at the applicable fixed or variable rate until all obligations of this Note are paid in full.

**Collection and Enforcement Costs:** If this Note is referred to an attorney, who is not a salaried employee, for collection or enforcement after default, You agree to pay an attorney's fee of 15% of the unpaid debt if the original amount financed exceeds $300.00, which attorney's fee You agree to be a reasonable one.

**Redstone Federal Credit Union warrants and certifies that it: 1) has no penalty for prepayment of loans, and 2) applies to this loan the provisions of Regulation Z which implements Public Law 90-321 (the Truth-In-Lending Act) and, where applicable, the Standards of Fairness promulgated by the Department of Defense.**

Case 22-81109-CRJ7   Doc 14   Filed 07/12/22   Entered 07/12/22 08:55:36   Desc Main
Document      Page 6 of 24

| MEMBER NAME(S) | Date | Loan Account Number |
|---|---|---|
| DEWAYNE RANEY | 6/24/2019 | ~~00000000~~327 |

**Collateral Insurance Agreement:**

**Vehicle Insurance Provisions:**

You understand that the terms of your loan agreement and/or note require that: (a) You obtain property insurance against loss or damage (subject to a maximum deductible of $500) on the vehicle securing your loan in an amount sufficient to cover the Credit Union's interest in the vehicle. This coverage is commonly referred to as comprehensive and collision insurance. (b) The insurance policy obtained must contain a loss payable clause endorsement naming the Credit Union as an additional insured. You understand that you may obtain the insurance from any agent or company of your choice. You will instruct your insurance agent to send a copy of the insurance policy, including an appropriate loss endorsement clause to:

**Redstone Federal Credit Union**
**220 Wynn Drive**
**Huntsville, AL 35893**

You hereby agree that if you fail to provide the Credit Union with acceptable evidence of the required insurance coverage at all times during the term of your loan, You will be in default under the terms of your loan agreement and as a result will represent a greater risk to the Credit Union. In this event, the Credit Union may at its option purchase insurance for its protection only. This insurance will not be liability insurance. You authorize the addition of such insurance premiums and finance charges thereon at the interest rate set forth in your loan agreement, to your loan balance prorated over the remaining term of the loan. You understand that the Credit Union will retain a security interest in the vehicle securing your loan until the entire balance, including any premiums and finance charges are paid.

Because you will represent an increased risk, you understand and agree that any insurance purchased pursuant to this Collateral Insurance Agreement following your failure to provide the required insurance:

1) Will include creditor physical damage coverage (providing reimbursement for expenses incurred after repossession of the vehicle to repair physical damage to the vehicle);
2) May provide a form of limited comprehensive and collision coverage which is primarily designed to protect only the Credit Union's interest in the vehicle and which will be subject to a $500.00 deductible and will never exceed the LEAST of (A) the net amount you owe on this loan, (B) the actual cash value of the vehicle at the time of any loss, or (C) the cost of repair or replacement of the vehicle;
3) Will not provide bodily injury or property damage liability coverage and will not fulfill the requirements of any financial responsibility law or any statutory requirement for no-fault coverage;
4) Will be rated according to high risk criteria and the Credit Union's business address rather than your residence; and
5) Will be effective and billed retroactively to the earliest date on which, to the Credit Union's knowledge, you were without the requisite insurance, regardless of when such insurance was actually put in place.

**Other Insurance Provisions:**

You promise to maintain insurance as long as any balance remains on this Note to protect Us from financial loss as a result of damage to or destruction of the property You pledge. You may obtain insurance protection through an agent of your choice. At the Credit Union's request you may be asked to provide proof of insurance protection. If You do not obtain insurance the Credit Union may at its sole option either: 1) obtain this insurance and add its cost to Your loan balance or 2) declare You in default and enforce any or all of its rights under this Personal Property Security Agreement. Insurance the Credit Union obtains is primarily for its protection, and will not insure You against bodily injury, property damage, or other liability claims. If the Credit Union obtains the insurance, You agree to pay an additional amount with Your payments to cover principal and interest applicable to Your insurance advance over the term of the policy commencing with Your receipt of notice of such advance. You further agree that any insurance premium advance will be secured by the security property.

**Neither this Agreement nor the Credit Union's past conduct in obtaining insurance on Your behalf upon Your default shall make Us responsible for obtaining insurance in the future.**

**THE PROPERTY DESCRIPTION ON PAGE 2 IS PART OF THIS AGREEMENT.**
**NOTICE: SIGN THIS AGREEMENT ON PAGE 1.**

Case 22-81109-CRJ7    Doc 14    Filed 07/12/22    Entered 07/12/22 08:55:36    Desc Main
Document    Page 7 of 24

# EXHIBIT B

# REDSTONE FEDERAL CREDIT UNION

## Note, Disclosure Statement and Security Agreement

| MEMBER NAME(S)/ADDRESS(ES)<br>KIP DWAYNE RANEY<br>110 CHRISTOPHER CIRCLE<br>ATHENS, AL 35611 | Date<br>7/26/2019<br>Loan Account Number<br>████████172 | In this Note, the words Credit Union and Us mean Redstone Federal Credit Union and anyone to whom We transfer Our rights under the terms and conditions of this Agreement. The words I, My, You, Your and Your(s) mean any person signing this Note. |
|---|---|---|

### FEDERAL TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of Your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost You, if You pay as scheduled. | Amount Financed<br>The amount of credit provided to You or on Your behalf. | Total of Payments<br>The amount You will have paid when You have made all payments as scheduled. |
|---|---|---|---|
| 4.300 % | $3,312.67 (e) | $23,650.00 | $26,962.67 (e) |

| YOUR PAYMENT SCHEDULE WILL BE: | Number of Payments | Amount of Payments | When Payments Are Due | | NO PENALTY FOR EARLY PAYOFF. | Filing Fees | MEANS (e) AN ESTIMATE |
|---|---|---|---|---|---|---|---|
| | 71 | $374.49 | MONTHLY | Beginning On | | $0.00 | |
| | Final Payment | $373.88 | | 9/23/2019 (e) | | | |

☑ **Your loan is a FIXED Rate loan for the life of the loan.**

☐ **Your loan is a VARIABLE Rate loan.** The Annual Percentage Rate will be determined by a loan rate index plus an       % margin and is subject to change. The Annual Percentage Rate and Daily Periodic Rate may increase or decrease as the index changes. The value of Your index will be subject to change every three (3) calendar months from the calendar month of this Agreement on the first day of that month. Your Annual Percentage Rate will be adjusted based upon the market index and margin on the fifth (5th) day of the month beginning four (4) calendar months after the calendar month of this Agreement and on the fifth (5th) day of every third (3rd) calendar months thereafter for the term of this Agreement. The Index is the weekly average yield (percent per annum) of one-year US Government Securities on actively traded non-inflation-indexed issues adjusted to constant maturities as published in the Federal Reserve's weekly H.15 release. The current index is the most recent index available as of the first Friday of the calendar month just prior to the calendar month of this Note.

☐ **Your loan is a Share (Savings) Secured Variable Rate Loan.** The Annual Percentage Rate on a loan advance that is secured by a Share Account (Savings) is established prior to or at the time of the advance and is disclosed above and is based on the dividend rate on the Share Account (Savings) that is pledged plus a 2.00% margin or 3.00%, whichever is higher. The index is the current dividend rate for the Shares Account (Savings) as approved by the Board of Directors at the time of the loan advance. The Share Account (Savings) dividend rate is subject to a range every calendar month on the first (1st) day of that month. Periodically, your Annual Percentage Rate will be adjusted based upon the new dividend rate plus the agreed upon margin of 3.00%, whichever is higher. Your initial change will occur on the fifth (5th) day of the month that is four (4) calendar months after the calendar month of this Agreement. After the initial change, any subsequent changes will take place on the fifth (5th) day of every third (3rd) calendar month for the term of this Agreement.

☐ **With regard to either variable rate loan,** The ANNUAL PERCENTAGE RATE shall not be adjusted higher than 18% or the maximum Annual Percentage Rate permissible by law whichever is less, nor decrease below 5.95% or 3% on Share (Savings) Secured loans over the lifetime of the loan; nor shall any adjustments of the ANNUAL PERCENTAGE RATE at any given change exceed 3% in any twelve (12) calendar month period. An increase in the Annual Percentage Rate will usually result in more payments of the same amount, and in more interest paid over the estimated term of this loan advance. For example: If You had borrowed $ 15,000.00 for 72 months at an ANNUAL PERCENTAGE RATE of 11%, You will have nine (9) additional payments to make if the ANNUAL PERCENTAGE RATE increased the maximum of 3% on the first adjustment date.

**Late Charge:** If a payment is late, You will be charged 5% of the amount of any installment, which is late by 10 days or more, but not less than $5 and not more than $100.

**Security:** You are giving a security interest in the goods or property being purchased, unless the following box is checked:  ☐    (brief description of other property already owned by borrower)

**See** your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, prepayment refunds and penalties, and security interest.

### COLLATERAL INSURANCE AGREEMENT

You understand that You are required to maintain comprehensive and collision coverage on the above collateral with a maximum deductible of $500. Failure to maintain coverage may result in added insurance premiums to Your loan in order to protect the security interest of the Credit Union. See Page 3 for additional Collateral Insurance provisions.

**PROMISE TO PAY:** You agree to be bound cy the terms of this Note and Personal Property Security Agreement on the reverse side and Collateral Insurance Agreement described above and continued on Page 3. You promise to pay all money loaned to You under this Agreement plus interest on the unpaid balance at the Annual Percentage Rate disclosed above. If more than one person signs below, except for any person who signs as owner of collateral, each will be responsible for repaying the loan in full (this means being jointly and severally liable). If You are not a Borrower but an Owner of the collateral for this loan, sign below and check the Owner of Collateral box. By doing so You agree only to the terms of the Personal Property Security Agreement, including the cross-collateralization and future advances provisions.

## CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

| BORROWER | DATE | ☐ CO-BORROWER ☐ CO-SIGNER ☐ OWNER OF COLLATERAL (other than a borrower) | DATE |
|---|---|---|---|
| _KPRaney_ | 7/26/19 | | |
| CO-BORROWER ☑ CO-SIGNER ☐ OWNER OF COLLATERAL (other than a borrower) | DATE | SIGNATURES VERIFIED BY RFCU EMPLOYEE / NOTARY | DATE |
| _Tammy Kanto_ | 7/26/19 | Tangela Suggs                                    (SEAL) | 7/26/2019 |

### APPLICATION FOR GROUP CREDIT INSURANCE - ALABAMA

| CREDIT LIFE INSURANCE | | CREDIT DISABILITY INSURANCE (Primary Applicant Only) | | |
|---|---|---|---|---|
| GROUP POLICY NUMBER<br>29301-G, 29303-G | INSURANCE MAXIMUM (PER INDEBTEDNESS)<br>$75,000 | GROUP POLICY NUMBER<br>29302-G, 29304-G | MAXIMUM MONTHLY DISABILITY BENEFIT<br>$750.00 | WAITING PERIOD<br>30 Days |
| MAXIMUM LOAN REPAYMENT PERIOD<br>180 Months | | MAXIMUM LOAN REPAYMENT PERIOD<br>180 Months | MAXIMUM AGGREGATE DISABILITY BENEFIT (PER INDEBTEDNESS) $75,000 | RETROACTIVE BENEFIT<br>☑ YES  ☐ NO |
| TERM OF INSURANCE<br>180 Months | TERMINATION DATE OF INSURANCE | TERM OF INSURANCE<br>180 MONTHS | TERMINATION DATE OF INSURANCE | CRITICAL PERIOD COVERAGE<br>☐ YES  ☑ NO |

I (we) are applying for the credit insurance coverage(s), selected below and agree to pay the required premium. I (we) understand that fees may be paid by the insurer in connection with this coverage to the sponsor of this plan and/or its affiliates or designates. I (we) understand that the purchase of this insurance is voluntary and not required in order to obtain credit, and that I (we) may terminate it at any time. I (we) understand that if Critical Period Disability Insurance Coverage is indicated above, a MAXIMUM OF 12 MONTHLY DISABILITY BENEFITS ARE PAYABLE PER CLAIM OCCURRENCE. I (we) also agree that:

1. I am eligible for life insurance if I am presently under age 70 and my loan is repayable within the maximum loan repayment period shown above. In no event is life insurance coverage to remain in force beyond the date you reach age 70. Please read the "When does your insurance terminate?" provision.
2. If joint life insurance is selected, we are eligible if the older applicant is presently under age 70 and our loan is repayable within the maximum loan repayment period shown above. We must be jointly and individually liable under the loan. Co-signers or guarantors are not eligible for insurance. In no event is joint life insurance coverage to remain in force beyond the date the older of the two of you reaches age 70. Please read the "When does your insurance terminate?" provision.
3. I am eligible for disability insurance if I am presently under age 66 and my loan is repayable within the maximum loan repayment period shown above. I also must be presently working outside the home for wages or profit for 30 hours or more per week and have been so working for 30 days or more immediately prior to this date. In no event is disability insurance coverage to remain in force beyond the date you reach age 66. Please read the "When does your insurance terminate?" provision.
4. A person signing this application, as co-applicant is not eligible for single disability insurance.

The following question must be answered to determine my (our) eligibility for insurance:

| PRIMARY APPLICANT | CO-APPLICANT (JOINT LIFE INSURANCE ONLY) | During the last two years have you been advised of or treated for cancer, heart attack or coronary artery disease, stroke, cirrhosis, or Acquired Immune Deficiency Syndrome (AIDS)? |
|---|---|---|
| ☐ Yes ☐ No | ☐ Yes ☐ No | |

My (our) answer to the above question is true to the best of my (our) knowledge and belief. If my (our) application or I answer "Yes" to this question, we understand that the person answering "Yes" is not eligible for insurance and will not be insured.

The effective date of my (our) insurance will be the date of this application, the date the eligible loan is disbursed, or the date the note evidencing the loan is signed, whichever date is later.

## THIS INSURANCE CONTAINS LIMITATIONS/EXCLUSIONS PERTAINING TO BENEFITS PAYABLE.

COVERAGE REQUESTED *(OPEN END MONTHLY PREMIUM PER $100 OF OUTSTANDING LOAN BALANCE)

| ☐ Yes ☑ No  Single Life 12.55* | ☐ Yes ☑ No  Joint Life 18.55* | ☐ Yes ☑ No  Credit Disability 21.66* | |
|---|---|---|---|
| APPLICANT'S SIGNATURE<br>x _KPRaney_ | DATE<br>7/26/19 | CO-APPLICANT'S SIGNATURE (Joint Life Only)<br>x | DATE | CS OPERATOR<br>Tangela Suggs |

Redstone Federal Credit Union- Confidential          Page 1 of 3 Pages          Revised 9/2011 ALClosedEndNote

# REDSTONE FEDERAL CREDIT UNION     *Note, Disclosure Statement and Security Agreement*

| MEMBER NAME(S) | Date | Loan Account Number |
|---|---|---|
| KIP DWAYNE RANEY | 7/26/2019 | 0█████172 |

ITEMIZATION OF AMOUNT FINANCED

| Amount | Paid To | Amount | Paid To | Amount | Paid To |
|---|---|---|---|---|---|
| 10,460.39 | SOUTHEAST TOYOTA FINAI | | | | |
| 13,169.61 | ██583 | | | | |

### PERSONAL PROPERTY SECURITY AGREEMENT

In addition to any shares (funds) you have on deposit with Us, you offer the following property to secure the above loan and also unless the collateral is a household good as defined in 12 C.F.R. Section 227.12 (d), the collateral securing this debt also secures all other debts now or hereafter owed by any party executing this Note to the Credit Union, including all debts incurred by credit card, except that this collateral shall not secure any loan that is secured by the debtor's principal residence.

Collateral   2015 TOYOTA TUNDRA 5TFRY5F10FX176527

Description:

It is further agreed that this instrument or a copy thereof, shall serve as a financing statement under the provisions of the Uniform Commercial Code, and that the signature of the parties on page 1 of this Note shall constitute the signing of such financing statement.

### ADDITIONAL PROVISIONS

**You further agree (continued from the face of note)**

**Payment Schedule:** You promise to repay the money loaned to You according to the payment schedule disclosed in the Truth in Lending Disclosure Statement on the reverse side. You understand and acknowledge that each payment is applied in the following order: late charges, finance charges, and any unpaid principal balance due.

**Prepayment or Irregular Payments:** Though You need only pay the fixed installments; You understand You have the right to repay Your entire loan at any time without penalty. You also understand You will only be charged interest to the date You repay Your entire loan. You may make larger payments without penalty and this may reduce the total amount of interest You will pay. Any partial payment of Your loan will not delay Your next scheduled due date(s). You understand any payment that (a) delays or (b) accelerates the reduction of Your loan balance will (a) increase or (b) decrease Your interest charge. The net effect of Your early and late payments, plus any changes caused by Your loan being a variable rate loan, if applicable, will be taken into account in determining the amount of the final payment due.

**Last Payment:** You give the Credit Union Your permission to deposit the balance of Your last payment, if any, to Your share account.

**Security Interest:** You understand and acknowledge that to protect Us, You give Us a security interest under the Uniform Commercial Code as adopted or modified by the laws of the lender's principal place of business in the property (the security) described on the reverse side and above. Unless the collateral is a household good as defined in 12 C.F.R. Section 227.12(d), the collateral securing this debt also secures all other debts now or hereafter owed to the Credit Union, including all debts incurred by credit card, except that this collateral shall not secure any loan that is secured by the debtor's principal residence. **Status of Secured Property:** You represent that You own the security and that there are no liens or any other claims against the security other than the Credit Union's. You agree not to sell, lease or transfer the security or pledge it to anyone else, until this loan has been paid in full; to take good care of the security and to pay all taxes and liens upon it; to obtain written permission from the Credit Union before making major alterations; to perform all acts which the Credit Union determines are necessary to make its security interest enforceable; not to use the security for any unlawful purposes; to allow the Credit Union to examine and inspect the security including reasonable attorney's fees. You will not move any collateral outside the state in which You reside without prior written Credit Union approval, unless You are moving under military orders and notify Us in advance of the new address. You understand and acknowledge that You will be in default if You fail to keep any of Your promises made to the Credit Union. We are required to protect the enforceability of Our security interest. Your promise to protect the enforceability of Our security interest.

**Filing fees and other charges:** You agree to pay all taxes and fees prescribed by law for determining the existence of or for perfecting any security interest of the Credit Union granted under the Note, Disclosure Statement and Security Agreement. See the Current Fee Schedule for other applicable charges.

**Delay in Enforcement:** The Credit Union can delay enforcing any of its rights under this Agreement any number of times without losing them. You are required to perform strictly under the terms of this Agreement.

**Governing Law:** It is expressly understood and agreed that the laws of the State of Alabama, except as preempted by the laws of the United States, shall govern this Note, Disclosure Statement and Security Agreement in all respects, including, but not limited to, interpretation, execution, validity, payment, notice, demand, protest, damage for non-payment and collection.

**Preservation of Agreement Provisions:** If any term, condition or provision of this Agreement is determined to be unenforceable only that provision shall be considered to be deleted from this Agreement, and all other terms, conditions and provisions will continue in force until the loan balance is paid in full.

**Power of Attorney:** You appoint the Credit Union Attorney-In-Fact to transfer title on any titled property that is collateral for Your loan upon approval by the Credit Union.

**Copy Received:** You acknowledge receipt of a copy of this Note, Disclosure Statement and Security Agreement; and accept and agree to all of its terms as indicated by Your signature on the reverse side.

**Events of Default:** You will be in default under this Note upon the occurrence of any of the following events, circumstances or occurrences: 1) If You fail to make a payment of principal and/or interest required under this Note by its due date; 2) Your failure to comply with any other terms, covenants or conditions of this Note, any separate security or assignment instrument which secures this Note, or any other agreement (including a

**Events of Default (con't): loan)** You may have with Us at any time; 3) If any warranty or representation or any information or Your application or any financial statements made or submitted to Us by you or on Your behalf in connection with this Note or to induce Us to make this loan proves to be false, misleading or incomplete in any material respect when made or furnished; 4) If You or any endorser, guarantor, co-signer or surety for You in connection with this Note (hereinafter termed "Surety") should die or become insolvent or generally unable to meet Your or its obligations as they become due; 5) If a petition should be filed or other proceedings should be started under the Federal Bankruptcy Code or any State insolvency statute by or against You or any Surety; 6) If a judgment or tax lien should be filed against You or any Surety; 7) If a Receiver should be appointed for You or any Surety; 8) If a writ or order of attachment, levy or garnishment should be issued or any proceeding should be started against You or any Surety or any of Yours or its property, assets or income, to include anyone starting a suit or proceeding to seize any of Your or Surety's funds on deposit with Us; 9) If You permit any other lien holder to gain priority over the lien or security interest of security instrument(s) which secures this Note (if any), except for any prior security interest disclosed in writing to Us that is outstanding when the Credit Union records Your security interest to secure this Note; 10) If You receive advances under any prior lien instrument beyond advances acknowledged by Us prior to recording of the security instrument(s) which secures this Note (if any); 11) If You should sell, transfer, convey or encumber any portion of or any interest in any collateral securing this Note without the Credit Union's prior written consent; 12) If You fail to make a payment or perform all of Your obligations under any instrument or other obligation secured by a security interest which has priority over the lien or security interest created by the security instrument(s) which secures this Note (if any); 13) With regard to a Share (Savings) Secured Variable Rate Loan, your failure to maintain a pledged Share (Savings) Account during the entire time any balance on this Note is outstanding, or 14) If the Credit Union should consider itself as to any debts due under this Note unsafe or not completely secure, or if it should believe, in good faith, that the prospect of Your payment or other performance under this Note is impaired or that the condition or value of the collateral (if any) which secures this Note has significantly deteriorated.

**Entire Balance Due:** If You are in default in any of the above ways, all of Your obligations to Us under this Note will immediately be due without Us giving You any advance notice. If any payment on Your debt under this Note is accepted after the Credit Union has demanded payment of the entire unpaid balance due or after the Credit Union has sued You, this won't be considered a waiver or forgiveness of any default in payments or any other default on Your part. Instead, the Credit Union will just apply any such payment to Your unpaid balance.

**Remedies on Default - Sale of Collateral:** If this Note is secured, and You do default on Your obligations under this Note, the Credit Union will have all of the rights and remedies provided by law and of a Secured Party under the Alabama Uniform Commercial Code and additionally, the specific rights: (1) To foreclose on its security interests and/or enforce its rights concerning the collateral securing this loan as provided in any Security Instrument; You have signed (2) If the Credit Union sells the Collateral, the sale proceeds will be applied in the following order; (a) To all of the Credit Union's expenses in connection with Us taking possession, storing, preparing for sale and selling of the Collateral, including its reasonable attorneys' fees; (b) To the costs of terminating any claims against the Collateral that have priority over the Credit Union's security interests; and then (c) To the unpaid balance of what You owe on this Note or any other debt cross-collateralized herein. Any money left over will be paid to You or any other party You know or that has a security interest in the Collateral. If the sale proceeds are less than the total You owe Us, You agree to pay the difference, including interest on the principal amount at the Annual Percentage Rate provided for in this Note or at the adjusted rate if this is a variable rate loan until paid in full. **Lien on Shares:** If You are in default, the Credit Union may apply all shares and/or deposits (except IRA and Keogh Accounts) then on deposit needed by the Credit Union to repay Your loan, in accordance with the Federal Credit Union Act or applicable State law. **Acceleration:** If You are in default, the Credit Union may demand payment of the unpaid balance, interest charges, late charges and collection costs, if any, as provided in this Note. You understand that interest will continue to accrue at the applicable fixed or variable rate until all obligations of this Note are paid in full. **Collection and Enforcement Costs:** If this Note is referred to an attorney, who is not a salaried employee, for collection or enforcement after default, You agree to pay an attorney's fee of 15% of the unpaid debt if the original amount financed exceeds $300.00, which attorney's fee You agree to be a reasonable one.

Redstone Federal Credit Union warrants and certifies that it: 1) has no penalty for prepayment of loans, and 2) applies to this loan the provisions of Regulation Z which implements Public Law 90-321 (the Truth-in-Lending Act) and, where applicable, the Standards of Fairness promulgated by the Department of Defense.

| MEMBER NAME(S) | Date | Loan Account Number |
|---|---|---|
| KIP DWAYNE RANEY | 7/26/2019 | ⬤⬤⬤⬤172 |

## Collateral Insurance Agreement:

**Vehicle Insurance Provisions:**

You understand that the terms of your loan agreement and/or note require that: (a) You obtain property insurance against loss or damage (subject to a maximum deductible of $500) on the vehicle securing your loan in an amount sufficient to cover the Credit Union's interest in the vehicle. This coverage is commonly referred to as comprehensive and collision insurance. (b) The insurance policy obtained must contain a loss payable clause endorsement naming the Credit Union as an additional insured. You understand that you may obtain the insurance from any agent or company of your choice. You will instruct your insurance agent to send a copy of the insurance policy, including an appropriate loss endorsement clause to:

**Redstone Federal Credit Union**
**220 Wynn Drive**
**Huntsville, AL 35893**

You hereby agree that if you fail to provide the Credit Union with acceptable evidence of the required insurance coverage at all times during the term of your loan. You will be in default under the terms of your loan agreement and as a result will represent a greater risk to the Credit Union. In this event, the Credit Union may at its option purchase insurance for its protection only. This insurance will not be liability insurance. You authorize the addition of such insurance premiums, and finance charges thereon at the interest rate set forth in your loan agreement, to your loan balance prorated over the remaining term of the loan. You understand that the Credit Union will retain a security interest in the vehicle securing your loan until the entire balance, including any premiums and finance charges are paid.

Because you will represent an increased risk, you understand and agree that any insurance purchased pursuant to this Collateral Insurance Agreement following your failure to provide the required insurance:

1) Will include creditor physical damage coverage (providing reimbursement for expenses incurred after repossession of the vehicle to repair physical damage to the vehicle);
2) May provide a form of limited comprehensive and collision coverage which is primarily designed to protect only the Credit Union's interest in the vehicle and which will be subject to a $500.00 deductible and will never exceed the LEAST of (A) the net amount you owe on this loan, (B) the actual cash value of the vehicle at the time of any loss, or (C) the cost of repair or replacement of the vehicle;
3) Will not provide bodily injury or property damage liability coverage and will not fulfill the requirements of any financial responsibility law or any statutory requirement for no-fault coverage;
4) Will be rated according to high risk criteria and the Credit Union's business address rather than your residence; and
5) Will be effective and billed retroactively to the earliest date on which, to the Credit Union's knowledge, you were without the requisite insurance, regardless of when such insurance was actually put in place.

**Other Insurance Provisions:**

You promise to maintain insurance as long as any balance remains on this Note to protect Us from financial loss as a result of damage to or destruction of the property You pledge. You may obtain insurance protection through an agent of your choice. At the Credit Union's request you may be asked to provide proof of insurance protection. If You do not obtain insurance the Credit Union may at its sole option either: 1) obtain this insurance and add its cost to Your loan balance or 2) declare You in default and enforce any or all of its rights under this Personal Property Security Agreement. Insurance the Credit Union obtains is primarily for its protection, and will not insure You against bodily injury, property damage, or other liability claims. If the Credit Union obtains the insurance, You agree to pay an additional amount with Your payments to cover principal and interest applicable to Your insurance advance over the term of the policy commencing with Your receipt of notice of such advance. You further agree that any insurance premium advance will be secured by the security property.

**Neither this Agreement nor the Credit Union's past conduct in obtaining insurance on Your behalf upon Your default shall make Us responsible for obtaining insurance in the future.**

**THE PROPERTY DESCRIPTION ON PAGE 2 IS PART OF THIS AGREEMENT.**
**NOTICE: SIGN THIS AGREEMENT ON PAGE 1.**

Case 22-81109-CRJ7   Doc 14   Filed 07/12/22   Entered 07/12/22 08:55:36   Desc Main
Document    Page 11 of 24

# EXHIBIT C

# REDSTONE FEDERAL CREDIT UNION

**Note, Disclosure Statement, Security Agreement, and Collateral Insurance Agreement**

**ALABAMA**

DEAL# 141284

In this Note, the words Credit Union and Us mean Redstone Federal Credit Union and anyone to Whom We transfer Our rights under the terms and conditions of this Agreement. We transfer Our rights under this Note, the words I, Me, Your and Your(s) mean any person signing this Note.

MEMBER NAME(S)/ADDRESS(ES): KIP RANEY
DYLAN RANEY
110 CHRISTOPHER CIRCLE
ATHENS, AL 35611

Date: 09/15/2017
Loan Account Number: _____

| The cost of Your credit as a yearly rate. | The dollar amount the credit will cost You, If You pay as scheduled. | Amount Financed The amount of credit provided to You or on Your behalf. | Total of Payments The amount You will have paid when You have made all payments as scheduled. |
|---|---|---|---|
| 3.85 % | 4377.05 (e) | 29538.67 | (e) |

| YOUR PAYMENT SCHEDULE WILL BE: | Number of Payments | Amount of Payments | When Payments Are Due | | NO PENALTY FOR EARLY PAYOFF. | Filing Fees | MEANS (e) AN ESTIMATE |
|---|---|---|---|---|---|---|---|
| | 83 | 404.33 | MONTHLY Beginning On | | | | |
| | Final Payment | 404.33 | 11/15/2017 (a) | | | N/A | |

Late Charge: If a payment is late, You will be charged 5% of the amount of any installment which is late by 10 days or more but not less than $5 and not more than $100.

Security: You are giving a purchase money security interest in the goods or property being purchased. See your contract documents for additional information about nonpayment, default, any required repayment in full before the scheduled date, and security interest.

### ITEMIZATION OF AMOUNT FINANCED

| Amount given to You Directly | Amount Paid on Your Account | Amounts Paid to Others on Your behalf | Paid To |
|---|---|---|---|
| | 29236.67 | 400.00 | RFCU GAP SEE |

### PERSONAL PROPERTY SECURITY AGREEMENT

In addition to any shares (funds) you have on deposit with Us, you under the following property to secure the above loan and also unless the collateral is a household good as defined in 12 C.F.R. Section 227.12 (d), the collateral securing this debt also secures all other debts now or hereafter owed by any of the undersigned to the Credit Union, including all debts incurred by credit card, except that this collateral shall not secure any loan that is secured by the debtor's principal residence.

Collateral Description: 2017 TOYOTA TACOMA V6 ........ C FTYRFN4HX146556

It is further agreed that this instrument or a copy thereof, shall serve as a financing statement under the provisions of the Uniform Commercial Code, and that the signature of the parties affixed below shall constitute the signing of such financing statement.

PROMISE TO PAY: You agree to be bound by the terms of this Note, Personal Property Security Agreement and Collateral Insurance Agreement described above and continued on the reverse side. You promise to pay all money loaned to You under this Agreement plus interest on the unpaid balance at the Annual Percentage Rate disclosed above. If more than one person signs below, except for any person who signs as owner of collateral, each will be responsible for repaying the loan in full (this means being jointly and severally liable). If You are not a Borrower but an Owner of the collateral for this loan, sign below and check the Owner of Collateral box. By doing so You agree only to the terms of the Personal Property Security Agreement, including the cross-collateralization and future advances provisions.

### CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

BORROWER: *Kip Raney* DATE: 09/15/2017

CO-BORROWER ☐ CO-SIGNER ☐ OWNER OF COLLATERAL (other than a borrower) DATE

CO-BORROWER ☐ CO-SIGNER ☐ OWNER OF COLLATERAL (other than a borrower) DATE

SIGNATURES VERIFIED BY DEALER'S EMPLOYEE / NOTARY (SEAL) DATE

**HOLDER IN DUE COURSE NOTICE: If the following box is checked,** ☒ **Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained with the proceeds hereof. Recovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder.**

### COLLATERAL INSURANCE AGREEMENT

NOTICE: You agree to be bound by all the terms of this Collateral Insurance Agreement described herein and continued on the reverse side. You understand that you are required to maintain comprehensive and collision insurance on the above collateral with a maximum deductible of $500 and name the Credit Union as a Loss Payee. If You do not purchase the insurance required on the automobile and the Credit Union purchase the insurance, the insurance purchased by the Credit Union will cover only the Credit Union's interest in the

with the proceeds hereof. Recovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder.

## CREDITOR'S INSURANCE AGREEMENT

NOTICE: You agreed to be bound by the terms of this Creditor Insurance Agreement contained herein and continued on the reverse side. You understand that you are required to maintain comprehensive and collision insurance on the above collateral with a maximum deductible of $500 and name the Credit Union as a Loss Payee. IF You do not purchase the insurance required on the automobile and the Credit Union purchases the insurance, the insurance purchased by the Credit Union will cover only the Credit Union's interest in the property. The insurance will not be liability insurance. Your signature below is evidence you have read the above statement, agree to the terms setout herein and on the reverse, and acknowledge that the Credit Union has explained it to you.

| BORROWER-OWNER | DATE | CO- | DATE |
|---|---|---|---|
| | 09/16/2017 | | 09/16/2017 |

### APPLICATION FOR GROUP CREDIT INSURANCE - ALABAMA

| CREDIT LIFE INSURANCE | | | CREDIT DISABILITY INSURANCE (Primary Applicant Only) | | |
|---|---|---|---|---|---|
| GROUP POLICY NUMBER | INSURANCE MAXIMUM (PER INDEBTEDNESS) | | GROUP POLICY NUMBER | MAXIMUM MONTHLY DISABILITY BENEFIT | WAITING PERIOD |
| 29961-0, 29962-0 | $75,000 | | 29961-0, 29962-0 | $752.90 | 28 Days |
| MAXIMUM LOAN REPAYMENT PERIOD | | | MAXIMUM LOAN REPAYMENT PERIOD | MAXIMUM AGGREGATE DISABILITY BENEFIT (PER INDEBTEDNESS) $75,000 | RETROACTIVE BENEFIT ☐ YES ☐ NO |
| 180 Months | | | 180 Months | | |
| TERM OF INSURANCE | TERMINATION DATE OF INSURANCE | | TERM OF INSURANCE | TERMINATION DATE OF INSURANCE | CRITICAL PERIOD COVERAGE ☐ YES ☐ NO |
| 180 Months | | | 180 MONTHS | | |

I (we) are applying for the credit insurance coverage(s) selected below and agree to pay the required premium. I (we) understand that fees may be paid by the insurer in connection with this coverage to the sponsor of this plan and/or its affiliates or designates. I (we) understand that the purchase of this insurance is voluntary and not required in order to obtain credit, and that I (we) may terminate it at any time. I (we) understand that Critical Period Disability Insurance Coverage is indicated above, a MAXIMUM OF 12 MONTHLY DISABILITY BENEFITS ARE PAYABLE PER CLAIM OCCURRENCE. I (we) also agree that:

1. I am eligible for life insurance if I am presently under age 70 and my loan is repayable within the maximum loan repayment period shown above. In no event is life insurance coverage to remain in force beyond the date you reach age 70. Please read the "When does your insurance terminate?" provision.

2. If joint life insurance is selected, we are eligible if the older applicant is presently under age 70 and our loan is repayable within the maximum loan repayment period shown above. We must be jointly and individually liable under the loan. Co-signers or guarantors are not eligible for insurance. In no event is joint life insurance coverage to remain in force beyond the date the older of the two of you reaches age 70. Please read the "When does your insurance terminate?" provision.

3. I am eligible for disability insurance if I am presently under age 66 and my loan is repayable within the maximum loan repayment period shown above. I also must be presently working outside the home for wages or profit for 30 hours or more per week and have been so working for 30 days or more immediately prior to this date. In no event is disability insurance coverage to remain in force beyond the date you reach age 66. Please read the "When does your insurance terminate?" provision.

4. A person signing this application as co-applicant is not eligible for single disability insurance.

**The following question must be answered to determine my (our) eligibility for insurance:**

| PRIMARY APPLICANT | CO-APPLICANT (JOINT LIFE INSURANCE ONLY) | |
|---|---|---|
| ☐ Yes ☐ No | ☐ Yes ☐ No | During the last two years have you been advised of or treated for cancer, heart attack or coronary artery disease, stroke, cirrhosis, or Acquired Immune Deficiency Syndrome (AIDS)? |

I (we) understand that if Critical Period Disability Insurance Coverage is indicated above, a MAXIMUM OF 12 MONTHLY DISABILITY BENEFITS ARE PAYABLE PER CLAIM OCCURRENCE. I (we) also agree that:

1. I am eligible for life insurance if I am presently under age 70 and my loan is repayable within the maximum loan repayment period shown above. In no event is life insurance coverage to remain in force beyond the date you reach age 70. Please read the "When does your insurance terminate?" provision.

2. If joint life insurance is selected, we are eligible if the older applicant is presently under age 70 and our loan is repayable within the maximum loan repayment period shown above. We must be jointly and individually liable under the loan. Co-signers or guarantors are not eligible for insurance. In no event is joint life insurance coverage to remain in force beyond the date the older of the two of you reaches age 70. Please read the "When does your insurance terminate?" provision.

3. I am eligible for disability insurance if I am presently under age 66 and my loan is repayable within the maximum loan repayment period shown above. I also must be presently working outside the home for wages or profit for 30 hours or more per week and have been so working for 30 days or more immediately prior to this date. In no event is disability insurance coverage to remain in force beyond the date you reach age 66. Please read the "When does your insurance terminate?" provision.

4. A person signing this application as co-applicant is not eligible for single disability insurance.

**The following question must be answered to determine my (our) eligibility for insurance:**

| PRIMARY APPLICANT | CO-APPLICANT (JOINT LIFE INSURANCE ONLY) | |
|---|---|---|
| ☐ Yes ☐ No | ☐ Yes ☐ No | During the last two years have you been advised of or treated for cancer, heart attack or coronary artery disease, stroke, cirrhosis, or Acquired Immune Deficiency Syndrome (AIDS)? |

My (our) answer to the above question is true to the best of my (our) knowledge and belief. If my co-applicant or I answer "Yes" to this question, we understand that the person answering "Yes" is not eligible for insurance and will not be insured.
The effective date of my (our) insurance will be the date of this application, the date the eligible loan is disbursed, or the date the note evidencing the loan is signed, whichever date is later.

### THIS INSURANCE CONTAINS LIMITATIONS/EXCLUSIONS PERTAINING TO BENEFITS PAYABLE.

### COVERAGE REQUESTED (OPEN END MONTHLY PREMIUM PER $100.00 OF OUTSTANDING LOAN BALANCE)

| ☐ Yes ☐ No    Single Life 17.5¢ | | ☐ Yes ☐ No    Joint Life 18.5¢ | | ☐ Yes ☐ No    Credit Disability 21.5¢ | |
|---|---|---|---|---|---|
| APPLICANT'S SIGNATURE | DATE | CO-APPLICANT'S SIGNATURE (Joint Life Only) | DATE | | CS Operator |
| X | 09/16/2017 | X | | | |

Redstone Federal Credit Union warrants and certifies that it: 1) has no penalty for prepayment of loans, and 2) applies to this loan the provisions of Regulation Z which implements Public Law 90-321 (the Truth-In-Lending Act) and, where applicable, the Standards of Fairness promulgated by the Department of Defense.

POS Closed End w Credit Insurance - ALABAMA Residents Revised 9/10/2008

**You further agree (continued from the face of note)**

**Payment Schedule:** You promise to repay the money loaned to You according to the payment schedule disclosed in the Truth in Lending Disclosure Statement on the reverse side. You understand and acknowledge that each payment is applied in the following order: late charges, finance charges, and any unpaid principal balance due.

**Prepayment or Irregular Payments:** Though You need only pay the fixed installments, You understand that You have the right to repay Your entire loan at any time without penalty. You also understand You will only be charged interest to the date You repay Your entire loan. You may make larger payments without penalty and this may reduce the total amount of interest You will pay. Any partial payment of Your loan will not delay Your next scheduled due date(s). You understand any payment that (a) delays or (b) accelerates the reduction of Your loan balance will (a) increase or (b) decrease Your interest charge. The net effect of Your early and late payments if applicable will be taken into account in determining the amount of the final payment due.

**Last Payment:** You give the Credit Union Your permission to deposit the balance of Your last payment, if any, to Your share account.

**Security Interest:** You understand and acknowledge that to protect Us, You give Us a security interest under the Uniform Commercial Code as adopted or modified by the laws of the lender's principal place of business in the property (the security) described on the reverse side. Unless the collateral is a household goods as defined in 12 C.F.R. Section 227.12(d), the collateral securing this debt also secures all other debts now or hereafter owed to the Credit Union, including all debts incurred by credit card, except that this collateral shall not secure any loan that is secured by the debtor's principal residence.

**Status of Secured Property:** You promise that You own the security and that there are no liens or any other claims against the security other than the Credit Union's. You agree not to sell, loan or transfer the security or pledge it as security to anyone else until the loan has been paid in full, to take good care of the security and to pay all taxes and liens upon it, to obtain written permission from the Credit Union before making major alterations or to perform any acts which the Credit Union determines are necessary to make its adequate interest information and to use the security for any unlawful purposes, to allow the Credit Union to examine and inspect the security at reasonable times, and to pay all costs of protecting the security including reasonable attorney's fees. You will not move any collateral outside the state in which You reside without prior written Credit Union approval, unless You are moving under military orders and notify us in advance of Your new address. You understand and acknowledge that You will be in default if You fail to keep any of Your promises under this Personal Property Security Agreement, including, but not limited to, Your promise to protect the enforceability of Our security interest.

**Filing fees and other charges:** You agree to pay all taxes and fees prescribed by law for determining the existence of or for perfecting any security interest of the Credit Union granted under this Note, Disclosure Statement and Security Agreement. See the Current Fee Schedule for other applicable charges.

**Delay in Enforcement:** The Credit Union can delay enforcing any of its rights under this Agreement any number of times without losing them. You are required to perform entirely under the terms of this Agreement.

**Governing Law:** It is expressly understood and agreed that the laws of the State of Alabama, except as preempted by the laws of the United States, shall govern this Note, Disclosure Statement and Security Agreement in all respects, including, but not limited to interpretation, execution, validity, payment, notice, demand, protest, damage for non-payment and collection.

**Preservation of Agreement Provisions.** If any term, condition or provision of this Agreement is determined to be unenforceable, only that provision shall be considered to be deleted from the Agreement, and all other terms, conditions and provisions will continue in force until the loan balance is paid in full.

**Power of Attorney:** You authorize the Credit Union Attorney-in-Fact to transfer title on any titled property that is collateral for Your loan upon approval by the Credit Union.

**Copy Received:** You acknowledge receipt of a copy of this Note, Disclosure Statement and Security Agreement and consent and agree to all of its terms as indicated by Your signature on the reverse side.

**Lien on Shares:** If You are in default, the Credit Union may apply all shares and/or

**Events of Default:** You will be in default under this Note upon the occurrence of any of the following events, circumstances or occurrences. 1) if You fail to make a payment of principal and/or interest required under this Note by its due date; 2) Your failure to comply with any other terms, covenants or conditions of this Note, any separate security or assignment instrument which secures this Note, or any other agreement (including a loan) You may have with Us at any time; 3) if any warranty or representation or any information in Your application or any financial statements made or submitted to Us by you or on Your behalf in connection with this Note or to induce Us to make this loan proves to be false, misleading or incomplete in any material respect when made or furnished; 4) if You or any endorser, guarantor, co-signer or surety for You in connection with this Note (hereinafter termed "Surety") should die or become insolvent or generally unable to meet Your or its obligations as they become due; 5) if a petition should be filed or other proceedings should be started under the Federal Bankruptcy Code or any State insolvency statute by or against You or any Surety; 6) if a judgment or tax lien should be filed against You or any Surety; 7) if a Receiver should be appointed for You or any Surety; 8) if a writ or order of attachment, levy or garnishment should be issued or any proceeding should be started against You or any Surety or any of Yours or its property, assets or income, to include anyone starting a suit or proceeding to seize any of Your or Surety's funds on deposit with Us; 9) if You permit any other lien holder to gain priority over the non-security interest of security instrument(s) which secures this Note (if any), except for any prior security interest disclosed in writing to Us that is outstanding when the Credit Union records Your security interest to secure this Note; 10) if You receive advances under any prior lien instrument beyond advances acknowledged to Us prior to recording of the security instrument(s) which secures this Note (if any); 11) if You should sell, transfer, convey or encumber any portion of or any interest in any collateral securing this Note without the Credit Union's prior written consent; 12) if You fail to make a payment or perform all of Your obligations under any instrument of other obligation secured by a security interest which has priority over the lien or security interest created by the security instrument(s) which secures this Note (if any); 13) if the Credit Union should consider itself as to any debts due under this Note unsafe or not completely secure, or if it should believe, in good faith, that the prospect of Your payment or other performance under this Note is impaired or that the condition or value of the collateral (if any) which secures this Note has significantly deteriorated.

**Entire Balance Due:** You are in default of any of the above ways, all of Your obligations to Us under this Note will immediately be due without Us giving You any advance notice. If any payment on Your debt under this Note is accepted by the Credit Union has demanded payment of the entire unpaid balance due or after the Credit Union has sued You, this won't be considered a waiver or forgiveness of any default in payments or any other default on Your part. Instead, the Credit Union will just apply any such payment to Your unpaid balance.

**Remedies on Default - Sale of Collateral:** If this Note is secured, and You do default on Your obligations under this Note, the Credit Union will have all of the rights and remedies provided by law and of a secured Party under the Alabama Uniform Commercial Code and additionally the credit rights: (1) To foreclose on its security interests and/or enforce its rights concerning the collateral securing this loan as provided in any Security Instruments; You have agreed. (2) If the Credit Union sells the Collateral, the sale proceeds will be applied in the following order: (a) To all of the Credit Union's expenses in connection with taking possession, storing, preparing for sale and selling of the Collateral including all reasonable attorney's fees; (b) To the costs of terminating any claims against the Collateral that have priority over the Credit Union's security interests and their (c) To the unpaid balance of what You owe on this Note or any other debt, cross-collateralized herein. Any money left over will be paid to You or any other party You know, or that has a security interest in the Collateral. If the sale proceeds are less than the total You owe Us, You agree to pay the difference, including interest on the principal amount at the Annual Percentage Rate provided for in this Note or at the adjusted rate, if applicable.

**Acceleration:** If You are in default, the Credit Union may demand payment of the unpaid balance, interest charges, late charges and collection costs, if any, as provided in this Note. You understand that interest will continue to accrue at the Annual Percentage Rate provided for in this Note until all obligations of this Note are paid in full.

**Collection and Enforcement Costs:** If this Note is referred to an attorney, who is not a

**Lien on Shares:** If You are in default, the Credit Union may apply all shares and/or deposits (except IRA and Keogh Accounts) then on deposit needed by the Credit Union to repay Your loan, in accordance with the Federal Credit Union Act or applicable State law.

Percentage rate provided for in this Note until all obligations of this Note are paid in full. **Collection and Enforcement Costs:** If this Note is referred to an attorney, who is not a salaried employee, for collection or enforcement after default, You agree to pay an attorney's fee of 15% of the unpaid debt if the original amount financed exceeds $300.00, which attorney's fee You agree to be a reasonable one.

Collateral Insurance Agreement

**Vehicle Insurance Provisions:**
You understand that the terms of your loan agreement and/or note require that: (a) You obtain property insurance against loss or damage (subject to a maximum deductible of $500) on the vehicle securing your loan in an amount sufficient to cover the Credit Union's interest in the vehicle. This coverage is commonly referred to as comprehensive and collision insurance. (b) The insurance policy obtained must contain a loss payable clause endorsement naming the Credit Union as a Loss Payee. You understand that you may obtain the insurance from any agent or company of your choice. You will instruct your insurance agent to send a copy of the insurance policy, including an appropriate loss endorsement clause to:

**Redstone Federal Credit Union**
**220 Wynn Drive**
**Huntsville, AL 35893**

You hereby agree that if you fail to provide the Credit Union with acceptable evidence of the required insurance coverage at all times during the term of your loan, You will be in default under the terms of your loan agreement and as a result will represent a greater risk to the Credit Union. In the event the Credit Union may at its option purchase insurance for its protection only. This insurance will not be liability insurance. You authorize the addition of such insurance premiums, and finance charges thereon at the interest rate set forth in your loan agreement to your loan balance prorated over the term of the policy commencing with Your receipt of notice of such advance. You understand that the Credit Union will retain a security interest in the vehicle securing your loan until the entire balance, including any premiums and finance charges are paid. Because you will represent an increased risk, you understand and agree that any insurance purchased pursuant to this Collateral Insurance Agreement following your failure to provide the required insurance.

1) Will include creditor physical damage coverage (providing reimbursement for expenses incurred after repossession of the vehicle to repair physical damage to the vehicle);
2) May provide a form of limited comprehensive and collision coverage which is primarily designed to protect only the Credit Union's interest in the vehicle and which will be subject to a $500.00 deductible and will never exceed the LEAST of (A) the net amount you owe on the loan, (B) the actual cash value of the vehicle at the time of any loss, or (C) the cost of repair or replacement of the vehicle;
3) Will not provide bodily injury or property damage liability coverage and will not fulfill the requirements of any financial responsibility law or any statutory requirement for no-fault coverage.
4) Will be rated according to high risk criteria and the Credit Union's business address rather than your residence, and
5) Will be effective and billed retroactively to the earliest date on which, to the Credit Union's knowledge, you were without the requisite insurance, regardless of when such insurance was actually put in place.

under the terms of your loan agreement and as a result will represent a greater risk to the Credit Union. In the event the Credit Union may at its option purchase insurance for its protection only. This insurance will not be liability insurance. You authorize the addition of such insurance premiums, and finance charges thereon at the interest rate set forth in your loan agreement to your loan balance prorated over the term of the policy commencing with Your receipt of notice of such advance. You understand that the Credit Union will retain a security interest in the vehicle securing your loan until the entire balance, including any premiums and finance charges are paid. Because you will represent an increased risk, you understand and agree that any insurance purchased pursuant to this Collateral Insurance Agreement following your failure to provide the required insurance.

1) Will include creditor physical damage coverage (providing reimbursement for expenses incurred after repossession of the vehicle to repair physical damage to the vehicle);
2) May provide a form of limited comprehensive and collision coverage which is primarily designed to protect only the Credit Union's interest in the vehicle and which will be subject to a $500.00 deductible and will never exceed the LEAST of (A) the net amount you owe on the loan, (B) the actual cash value of the vehicle at the time of any loss, or (C) the cost of repair or replacement of the vehicle;
3) Will not provide bodily injury or property damage liability coverage and will not fulfill the requirements of any financial responsibility law or any statutory requirement for no-fault coverage.
4) Will be rated according to high risk criteria and the Credit Union's business address rather than your residence, and
5) Will be effective and billed retroactively to the earliest date on which, to the Credit Union's knowledge, you were without the requisite insurance, regardless of when such insurance was actually put in place.

**Other Insurance Provisions:**
You promise to maintain insurance as long as any balance remains on this Note to protect Us from financial loss as a result of damage to or destruction of the property You pledge. You may obtain insurance protection through an agent of your choice. At the Credit Union's request you may be asked to provide proof of insurance protection. If You do not obtain insurance the Credit Union may at its sole option add its cost to Your loan balance or 2) declare You in default and enforce any or all of its rights under this Personal Property Security Agreement. Insurance the Credit Union obtains is primary for its protection, and will not insure You against bodily injury, property damage, or other liability claims. If the Credit Union obtains the insurance, You agree to pay an additional amount with Your payments to cover principal and interest applicable to Your insurance advance over the term of the policy commencing with Your receipt of notice of such advance. You further agree that any insurance premium advance will be secured by the security property.

Neither this Agreement nor the Credit Union's past conduct in obtaining insurance on Your behalf upon Your default shall make Us responsible for obtaining insurance in the future.

**THE PROPERTY DESCRIPTION ON THE REVERSE SIDE IS PART OF THIS AGREEMENT.**

**NOTICE: SIGN THIS AGREEMENT ON THE REVERSE SIDE.**

# EXHIBIT D

DocuSign Envelope ID: E08814E0-1157-49B8-A84D-2879BCEFC6B2

## REDSTONE FEDERAL CREDIT UNION

### Note, Disclosure Statement and Security Agreement

| MEMBER NAME(S)/ADDRESS(ES) | Date | In this Note, the words Credit Union and Us mean Redstone Federal Credit Union and anyone to Whom We transfer Our rights under the terms and conditions of this Agreement. The words I, My, You, Your and Your(s) mean any person signing this Note. |
|---|---|---|
| KIP DWAYNE RANEY, TAMMY P RANEY | 10/19/2018 | |
| 110 CHRISTOPHER CIR | Loan Account Number | |
| ATHENS, AL 35611 | ⬛⬛⬛⬛⬛868 | |

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments |
|---|---|---|---|
| The cost of Your credit as a yearly rate. | The dollar amount the credit will cost You, if You pay as scheduled. | The amount of credit provided to You or on Your behalf. | The amount You will have paid when You have made all payments as scheduled. |
| 11.000 % | $15,394.45 (e) | $48,718.49 | $54,112.94 (e) |

| YOUR PAYMENT SCHEDULE WILL BE: | Number of Payments | Amount of Payments | When Payments Are Due | NO PENALTY FOR EARLY PAYOFF. | Filing Fees | MEANS (e) AN ESTIMATE |
|---|---|---|---|---|---|---|
| | 59 | $1,068.55 | MONTHLY | | | |
| | Final Payment | $1,068.49 | Beginning On 12/18/2018 (e) | | $0.00 | |

☒ **Your loan is a FIXED Rate loan for the life of the loan.**

☐ **Your loan is a VARIABLE Rate loan.** The Annual Percentage Rate will be determined by adding the index below plus an ____ % margin and is subject to change. The Annual Percentage Rate and Daily Periodic Rate may increase or decrease as the index changes. The value of Your index will be subject to change every three (3) calendar months from the calendar month of this Agreement on the first day of that month. Your Annual Percentage Rate will be adjusted based upon the market index and margin on the fifth (5th) day of the month beginning four (4) calendar months after the calendar month of this Agreement and on the fifth (5th) day of every third (3rd) calendar month thereafter for the term of this Agreement. The Index is the weekly average yield (percent per annum) of one-year US Government Securities on actively traded non-inflation-indexed issues adjusted to constant maturities as published in the Federal Reserve's weekly H.15 release. The current Index is the most recent index available as of the first Friday of the calendar month just prior to the calendar month of this Note.

☐ **Your loan is a Share (Savings) Secured Variable Rate Loan.** The Annual Percentage Rate on a loan advance that is secured by a Share Account (Savings) is established prior to or at the time of the advance and is disclosed above and is based on the dividend rate on the Share Account (Savings) that is pledged plus a 2.00% margin or 3.00%, whichever is higher. The Index is the current dividend rate for the Shares Account (Savings) as approved by the Board of Directors at the time of the loan advance. The Share Account (Savings) dividend rate is subject to change every calendar month on the first (1st) day of that month. Periodically, Your Annual Percentage Rate will be adjusted based upon the new dividend rate plus the agreed upon margin or 3.00%, whichever is higher. Your initial change will occur on the fifth (5th) day of the month that is four (4) calendar months after the calendar month of this Agreement. After the initial change, any subsequent changes will take place on the fifth (5th) day of every third (3rd) calendar month for the term of this Agreement.

☐ **With regard to either variable rate loan,** the ANNUAL PERCENTAGE RATE shall not be adjusted higher than 18% or the maximum Annual Percentage Rate permissible by law whichever is less, nor decrease below 5.95% or 3% on Share (Savings) Secured loans over the lifetime of the loan; nor shall any adjustments of the ANNUAL PERCENTAGE RATE at any given change exceed 3% in any twelve (12) calendar month period. An increase in the Annual Percentage Rate will usually result in more payments of the same amount, and in more interest paid over the extended term of this loan advance. For example: if You had borrowed $15,000.00 for 72 months at an ANNUAL PERCENTAGE RATE of 11%, You will have nine (9) additional payments to make if the ANNUAL PERCENTAGE RATE increased the maximum of 3% on the first adjustment date.

**Late Charge:** If a payment is late, You will be charged 5% of the amount of any installment, which is late by 10 days or more, but not less than $5 and not more than $100.

**Security:** You are giving a purchase money security interest in the _____ (brief description of other property already owned by borrower) goods or property being purchased, unless the following box is checked: ☐

See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, prepayment refunds and penalties, and security interest.

You understand that You are required to maintain comprehensive and collision coverage on the above collateral with a maximum deductible of $500. Failure to maintain coverage may result in added insurance premiums to Your loan in order to protect the security interest of the Credit Union. See Page 3 for additional Collateral Insurance provisions.

**PROMISE TO PAY:** You agree to be bound by the terms of this Note and Personal Property Security Agreement on the reverse side and Collateral Insurance Agreement described above and contained on Page 3. You promise to pay all money loaned to You under this Agreement plus interest on the unpaid balance at the Annual Percentage Rate disclosed above. If more than one person signs below, except for any person who signs as owner of collateral, each will be responsible for repaying the loan in full (this means being jointly and severally liable). If You are not a Borrower but an Owner of the collateral for this loan, sign below and check the Owner of Collateral box. By doing so You agree only to the terms of the Personal Property Security Agreement, including the cross-collateralization and future advances provisions.

### CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

| BORROWER by: | DATE | CO-BORROWER ☐ CO-SIGNER ☐ OWNER OF COLLATERAL (other than a borrower) | DATE |
|---|---|---|---|
| *Kip Raney* | 10/19/2018 | *Tammy Raney* | 10/19/2018 |
| CO-BORROWER ☐ CO-SIGNER ☐ OWNER OF COLLATERAL (other than a borrower) | DATE | SIGNATURE OF RFCU EMPLOYEE / NOTARY | DATE |
| | | *Sylvester Lyons* (SEAL) | 10/19/2018 |

| CREDIT LIFE INSURANCE | | CREDIT DISABILITY INSURANCE (Primary Applicant Only) | |
|---|---|---|---|
| GROUP POLICY NUMBER 29301-G, 29302-G | INSURANCE MAXIMUM (PER INDEBTEDNESS) $75,000 | GROUP POLICY NUMBER 29302-G, 29304-G | MAXIMUM MONTHLY DISABILITY BENEFIT $750.00 | WAITING PERIOD 30 Days |
| MAXIMUM LOAN REPAYMENT PERIOD 180 Months | | MAXIMUM LOAN REPAYMENT PERIOD 180 Months | MAXIMUM AGGREGATE DISABILITY BENEFIT (PER INDEBTEDNESS) $75,000 | RETROACTIVE BENEFIT ☐ YES ☐ NO |
| TERM OF INSURANCE 180 Months | TERMINATION DATE OF INSURANCE | TERM OF INSURANCE 180 MONTHS | TERMINATION DATE OF INSURANCE | CRITICAL PERIOD COVERAGE ☐ YES ☒ NO |

I (we) are applying for the credit insurance coverage(s) selected below and agree to pay the required premium. I (we) understand that fees may be paid by the insurer in connection with this coverage to the sponsor of this plan and/or its affiliates or designates. I (we) understand that the purchase of this insurance is voluntary and not required in order to obtain credit, and that I (we) may terminate it at any time. I (we) understand that if Critical Period Disability Insurance Coverage is indicated above, a MAXIMUM of 12 MONTHLY DISABILITY BENEFITS ARE PAYABLE PER CLAIM OCCURRENCE. I (we) also agree that:

1. I am eligible for life insurance if I am presently under age 70 and my loan is repayable within the maximum loan repayment period shown above. In no event is life insurance coverage to remain in force beyond the date you reach age 70. Please read the "When does your insurance terminate?" provision.

2. If joint life insurance is selected, we are eligible if the older applicant is presently under age 70 and our loan is repayable within the maximum loan repayment period shown above. We must be jointly and individually liable under the loan. Co-signers or guarantors are not eligible for insurance. In no event is joint life insurance coverage to remain in force beyond the date the older of the two of you reaches age 70. Please read the "When does your insurance terminate?" provision.

3. I am eligible for disability insurance if I am presently under age 66 and my loan is repayable within the maximum loan repayment period shown above. I also must be presently working outside the home for wages or profit for 30 hours or more and have been so working for 30 days or more immediately prior to this date. In no event is disability insurance coverage to remain in force beyond the date you reach age 66. Please read the "When does your insurance terminate?" provision.

4. A person signing this application as co-applicant is not eligible for single disability insurance.

The following question must be answered to determine my (our) eligibility for insurance:

| PRIMARY APPLICANT | CO-APPLICANT (JOINT LIFE INSURANCE ONLY) | During the last two years have you been advised of or treated for cancer, heart attack or coronary artery disease, stroke, cirrhosis, or Acquired Immune Deficiency Syndrome (AIDS)? |
|---|---|---|
| ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No |

My (our) answer to the above question is true to the best of my (our) knowledge and belief. If my co-applicant or I answer "Yes" to this question, we understand that the applicable answer "Yes" is not eligible for insurance and will not be insured.

The effective date of my (our) insurance will be the date of this application, the date the eligible loan is disbursed, or the date the note extending the loan is signed, whichever date is later.

**THIS INSURANCE CONTAINS LIMITATIONS/EXCLUSIONS PERTAINING TO BENEFITS PAYABLE.**
COVERAGE REQUESTED %(PER MONTH) MONTHLY PREMIUM PER $100.00 OF OUTSTANDING LOAN BALANCE)

| ☐ Yes ☒ No Single Life 12.36¢ | ☐ Yes ☒ No Joint Life 18.56¢ | ☐ Yes ☒ No Credit Disability 21.56¢ | |
|---|---|---|---|
| APPLICANT'S SIGNATURE | DATE | CO-APPLICANT'S SIGNATURE (Joint Life Only) | DATE | CS OPERATOR |
| X *Kip Raney* | 10/19/2018 | X *Tammy Raney* | 10/19/2018 | Sylvester Lyons |

Redstone Federal Credit Union- Confidential     Page 2 of 3 pages     Revised 9/2011 ALClosedEndNote

DocuSign Envelope ID: E08814E0-1157-49B8-A84D-2879BCEFC6B2

# REDSTONE FEDERAL CREDIT UNION    *Note, Disclosure Statement and Security Agreement*

| MEMBER NAME(S) | Date | Loan Account Number |
|---|---|---|
| KIP DWAYNE RANEY | 10/19/2018 | [redacted]668 |

| Amount | Paid To | Amount | Paid To | Amount | Paid To |
|---|---|---|---|---|---|
| 4,847.43 | CAPITAL ONE | 6,587.08 | WELLS FARGO CARD SERVI | 11,651.49 | BARCLAYS |
| 3,804.57 | BARCLAYS | 1,733.62 | LOWES | 4,094.42 | SYNCHRONY BANK |

In addition to any shares (funds) you have on deposit with Us, you offer the following property to secure the above loan and also unless the collateral is a household good as defined in 12 C.F.R. Section 227.12 (d), the collateral securing this debt also secures all other debts now or hereafter owed by any party executing this Note to the Credit Union, including all debts incurred by credit card, except that this collateral shall not secure any loan that is secured by the debtor's principal residence.
Collateral: ***
Description:
It is further agreed that this instrument or a copy thereof, shall serve as a financing statement under the provisions of the Uniform Commercial Code, and that the signature of the parties on page 1 of this Note shall constitute the signing of such financing statement.

## You further agree (continued from the face of note)

**Payment Schedule:** You promise to repay the money loaned to You according to the payment schedule disclosed in the Truth in Lending Disclosure Statement on the reverse side. You understand and acknowledge that each payment is applied in the following order: late charges, finance charges, and any unpaid principal balance due.

**Prepayment or Irregular Payments:** Though You need only pay the fixed installments, You understand You have the right to repay Your entire loan at any time without penalty. You also understand You will only be charged interest to the date You repay Your entire loan. You may make larger payments without penalty and this may reduce the total amount of interest You will pay. Any partial payment of Your loan will not delay Your next scheduled due date(s). You understand any payment that (a) delays or (b) accelerates the reduction of Your loan balance will (a) increase or (b) decrease Your interest charge. The net effect of Your early and late payments, plus any changes caused by Your loan being a variable rate loan, if applicable, will be taken into account in determining the amount of the final payment due.

**Last Payment:** You give the Credit Union Your permission to deposit the balance of Your last payment, if any, to Your share account.

**Security Interest:** You understand and acknowledge that to protect Us, You give Us a security interest under the Uniform Commercial Code as adopted or modified by the laws of the lender's principal place of business in the property (the security) described on the reverse side and above. Unless the collateral is a household good as defined in 12 C.F.R. Section 227.12(d), the collateral securing this debt also secures all other debts now or hereafter owed to the Credit Union, including all debts incurred by credit card, except that this collateral shall not secure any loan that is secured by the debtor's principal residence.

**Status of Secured Property:** You promise that You own the security and that there are no liens or any other claims against the security other than the Credit Union's. You agree not to sell, lease or transfer the security or pledge it as security to anyone else, until the loan has been paid in full; to take good care of the security and to pay all taxes and liens upon it; to obtain written permission from the Credit Union before making major alterations; to perform all acts which the Credit Union determines are necessary to make its security interest enforceable; not to use the security for any unlawful purposes; to allow the Credit Union to examine and inspect the security at reasonable times; and to pay all costs of protecting the security including reasonable attorney's fees. You will not move any collateral outside the state in which You reside without prior written Credit Union approval, unless You are moving under military orders and notify Us in advance of the new address. You understand and acknowledge that You will be in default if You fail to keep any of Your promises under this Personal Property Security Agreement, including, but not limited to, Your promise to protect the enforceability of Our security interest.

**Filing fees and other charges:** You agree to pay all taxes and fees prescribed by law for determining the existence of or for perfecting any security interest of the Credit Union granted under the Note, Disclosure Statement and Security Agreement. See the Current Fee Schedule for other applicable charges.

**Delay in Enforcement:** The Credit Union can delay enforcing any of its rights under this Agreement any number of times without losing them. You are required to perform strictly under the terms of this Agreement.

**Governing Law:** It is expressly understood and agreed that the laws of the State of Alabama, except as preempted by the laws of the United States, shall govern this Note, Disclosure Statement and Security Agreement in all respects, including, but not limited to, interpretation, execution, validity, payment, notice, demand, protest, damage for non-payment and collection.

**Preservation of Agreement Provisions:** If any term, condition or provision of this Agreement is determined to be unenforceable then that provision shall be considered to be deleted from this Agreement, and all other terms, conditions and provisions will continue in force until this loan balance is paid in full.

**Power of Attorney:** You appoint the Credit Union Attorney-In-Fact to transfer title on any titled property that is collateral for Your loan upon approval by the Credit Union.

**Copy Received:** You acknowledge receipt of a copy of this Note, Disclosure Statement and Security Agreement; and accept and agree to all of its terms as indicated by Your signature on the reverse side.

**Events of Default:** You will be in default under this Note upon the occurrence of any of the following events, circumstances or occurrences: 1) If You fail to make a payment of principal and/or interest required under this Note by its due date; 2) Your failure to comply with any other terms, covenants or conditions of this Note, any separate security or assignment instrument which secures this Note, or any other agreement (including a

**Events of Default (con't):** loan) You may have with Us at any time; 3) If any warranty or representation or any information in Your application or any financial statements made or submitted to Us by you or on Your behalf in connection with this Note or to induce Us to make this loan proves to be false, misleading or incomplete in any material respect when made or furnished; 4) If You or any endorser, guarantor, co-signer or surety for You in connection with this Note (hereinafter termed "Surety") should die or become insolvent or generally unable to meet Your or its obligations as they become due; 5) If a petition should be filed or other proceedings should be started under the Federal Bankruptcy Code or any State Insolvency statute by or against You or any Surety; 6) If a judgment or tax lien should be filed against You or any Surety; 7) If a Receiver should be appointed for You or any Surety; 8) If a writ or order of attachment, levy or garnishment should be issued or any proceeding should be started against You or any Surety or any of Your acts or its property, assets or income, to include anyone starting a suit or proceeding to seize any of Your or Surety's funds on deposit with Us; 9) If You permit any other lien holder to gain priority over the lien or security interest of security instrument(s) which secures this Note (if any), except for any prior security interest disclosed in writing to Us that is outstanding when the Credit Union records Your security interest to secure this Note; 10) If You receive advances under any prior lien instrument beyond advances acknowledged by Us prior to recording of the security instrument(s) which secures this Note (if any); 11) If You should sell, transfer, convey or encumber any portion of or any interest in any collateral securing this Note without Our Credit Union's prior written consent; 12) If You fail to make a payment or perform all of Your obligations under any instrument or other obligation secured by a security interest which has priority over the lien or security interest created by the security instrument(s) which secures this Note (if any); 13) With regard to a Share (Savings) Secured Variable Rate Loan, your failure to maintain a pledged Share (Savings) Account during the entire time any balance on this Note is outstanding, or 14) If the Credit Union should consider itself as to any debts due under this Note unsafe or not completely secure, or if it should believe, in good faith, that the prospect of Your payment or other performance under this Note is impaired or that the condition or value of the collateral (if any) which secures this Note has significantly deteriorated.

**Entire Balance Due:** If You are in default in any of the above ways, all of Your obligations to Us under this Note will immediately be due without Us giving You any advance notice. If any payment on Your debt under this Note is accepted after the Credit Union has demanded payment of the entire unpaid balance due or after the Credit Union has sued You, this won't be considered a waiver or forgiveness of any default in payments or any other default on Your part. Instead, the Credit Union will just apply any such payment to Your unpaid balance.

**Remedies on Default - Sale of Collateral:** If this Note is secured, and You do default on Your obligations under this Note, the Credit Union will have all of the rights and remedies provided by law and of a Secured Party under the Alabama Uniform Commercial Code and additionally, the specific rights: (1) To foreclose on its security interests and/or enforce its rights concerning the collateral securing this loan as provided in any Security Instrument(s) You have signed. (2) If the Credit Union sells the Collateral, the sale proceeds will be applied in the following order: (a) To all of the Credit Union's expenses in connection with its taking possession, storing, preparing for sale and selling of the Collateral, including its reasonable attorneys' fees; (b) To the costs of terminating any claims against the Collateral that have priority over the Credit Union's security interests; and then (c) To the unpaid balance of what You owe on this Note or any other debt cross-collateralized herein. Any money left over will be paid to You or any other party You know of that has a security interest in the Collateral. If the sale proceeds are less than the total You owe Us, You agree to pay the difference, including interest on the principal amount at the Annual Percentage Rate provided for in this Note or at the adjusted rate if this is a variable rate loan until paid in full.

**Lien on Shares:** If You are in default, the Credit Union may apply all shares and/or deposits (except IRA and Keogh Accounts) then on deposit needed by the Credit Union to repay Your loan, in accordance with the Federal Credit Union Act or applicable State law.

**Acceleration:** If You are in default, the Credit Union may demand payment of the unpaid balance, interest charges, late charges and collection costs, if any, as provided in this Note. You understand that interest will continue to accrue at the applicable fixed or variable rate until all obligations of this Note are paid in full.

**Collection and Enforcement Costs:** If this Note is referred to an attorney, who is not a salaried employee, for collection or enforcement after default, You agree to pay an attorney's fee of 15% of the unpaid debt if the original amount financed exceeds $300.00, which attorney's fee You agree to be a reasonable one.

Redstone Federal Credit Union warrants and certifies that it: 1) has no penalty for prepayment of loans, and 2) applies to this loan the provisions of Regulation Z which implements Public Law 90-321 (the Truth-in-Lending Act) and, where applicable, the Standards of Fairness promulgated by the Department of Defense.

DocuSign Envelope ID: E08814E0-1157-49B8-A84D-2879BCEFC6B2

# REDSTONE FEDERAL CREDIT UNION   *Note, Disclosure Statement and Security Agreement*

| MEMBER NAME(S) | Date | Loan Account Number |
|---|---|---|
| KIP DWAYNE RANEY | 10/19/2018 | ⬛⬛⬛868 |

**Vehicle Insurance Provisions:**

You understand that the terms of your loan agreement and/or note require that: (a) You obtain property insurance against loss or damage (subject to a maximum deductible of $500) on the vehicle securing your loan in an amount sufficient to cover the Credit Union's interest in the vehicle. This coverage is commonly referred to as comprehensive and collision insurance. (b) The insurance policy obtained must contain a loss payable clause endorsement naming the Credit Union as an additional insured. You understand that you may obtain the insurance from any agent or company of your choice. You will instruct your insurance agent to send a copy of the insurance policy, including an appropriate loss endorsement clause to:

**Redstone Federal Credit Union**
**220 Wynn Drive**
**Huntsville, AL 35893**

You hereby agree that if you fail to provide the Credit Union with acceptable evidence of the required insurance coverage at all times during the term of your loan, You will be in default under the terms of your loan agreement and as a result will represent a greater risk to the Credit Union. In this event, the Credit Union may at its option purchase insurance for its protection only. This insurance will not be liability insurance. You authorize the addition of such insurance premiums, and finance charges thereon at the interest rate set forth in your loan agreement, to your loan balance prorated over the remaining term of the loan. You understand that the Credit Union will retain a security interest in the vehicle securing your loan until the entire balance, including any premiums and finance charges are paid.

Because you will represent an increased risk, you understand and agree that any insurance purchased pursuant to this Collateral Insurance Agreement following your failure to provide the required insurance:

1) Will include creditor physical damage coverage (providing reimbursement for expenses incurred after repossession of the vehicle to repair physical damage to the vehicle);
2) May provide a form of limited comprehensive and collision coverage which is primarily designed to protect only the Credit Union's interest in the vehicle and which will be subject to a $500.00 deductible and will never exceed the LEAST of (A) the net amount you owe on this loan, (B) the actual cash value of the vehicle at the time of any loss, or (C) the cost of repair or replacement of the vehicle;
3) Will not provide bodily injury or property damage liability coverage and will not fulfill the requirements of any financial responsibility law or any statutory requirement for no-fault coverage;
4) Will be rated according to high risk criteria and the Credit Union's business address rather than your residence; and
5) Will be effective and billed retroactively to the earliest date on which, to the Credit Union's knowledge, you were without the requisite insurance, regardless of when such insurance was actually put in place.

**Other Insurance Provisions:**

You promise to maintain insurance as long as any balance remains on this Note to protect Us from financial loss as a result of damage to or destruction of the property You pledge. You may obtain insurance protection through an agent of your choice. At the Credit Union's request you may be asked to provide proof of insurance protection. If You do not obtain insurance the Credit Union may at its sole option either: 1) obtain this insurance and add its cost to Your loan balance or 2) declare You in default and enforce any or all of its rights under this Personal Property Security Agreement. Insurance the Credit Union obtains is primarily for its protection, and will not insure You against bodily injury, property damage, or other liability claims. If the Credit Union obtains the insurance, You agree to pay an additional amount with Your payments to cover principal and interest applicable to Your insurance advance over the term of the policy commencing with Your receipt of notice of such advance. You further agree that any insurance premium advance will be secured by the security property.

Neither this Agreement nor the Credit Union's past conduct in obtaining insurance on Your behalf upon Your default shall make Us responsible for obtaining insurance in the future.

**THE PROPERTY DESCRIPTION ON PAGE 2 IS PART OF THIS AGREEMENT.**
**NOTICE: SIGN THIS AGREEMENT ON PAGE 1.**

# EXHIBIT E



## CERTIFICATE OF TITLE FOR A VEHICLE

| TITLE NO. | VEHICLE IDENTIFICATION NUMBER | TRANS CODE | DATE ISSUED |
|---|---|---|---|
| 102296543 | 4T1BF1FK1GU593291 | 90 | 07/15/2019 |

| YR. MODEL | MAKE | MODEL | BODY TYPE | PREV AL TITLE NO |
|---|---|---|---|---|
| 2016 | TOYOTA | CAMRY | 4D | |

| CYL | NEW | USED | DEMO | PURCHASE DATE | NO. LIENS | COLOR | ODOMETER |
|---|---|---|---|---|---|---|---|
| 04 | | XX | | 06/24/2019 | 1 | BLACK | 049545 |

NAME(S) AND MAILING ADDRESS OF OWNER(S)

RANEY CHARLES DEWAYNE
808 N BEATY ST
ATHENS AL 35611

MAIL TO

REDSTONE FEDERAL CREDIT UNION
220 WYNN DRIVE
HUNTSVILLE AL 35893

RESIDENT ADDRESS IF DIFFERENT

LEGEND(S)

ODOMETER: ACTUAL

RELEASE OF LIEN
The holder of Lien on the vehicle described
in this Certificate does hereby state that the
lien described in said Certificate of Title is
released and discharged.

_____
First Lienholder

1ST LIENHOLDER'S NAME, ADDRESS AND LIEN DATE    06/24/2019

REDSTONE FEDERAL CREDIT UNION
220 WYNN DRIVE
HUNTSVILLE AL 35893

By _____
Signature of Authorized Agent

Date _____

2ND LIENHOLDER'S NAME, ADDRESS AND LIEN DATE

_____
Second Lienholder

By _____
Signature of Authorized Agent

Date _____



This certificate serves as an official document of the Depa
of title has been made for the vehicle described herein, purs
named on the face hereof has been duly recorded as the li
the security interest by Fon(s) show hereon, if any. But, said
to the United States, this State or any official subdivision of

586
DEWAYNE RANEY
327

CONTROL NUMBER
52173871

KEEP IN A SAFE

TITLE



# STATE OF
# ALABAMA
## DEPARTMENT OF REVENUE

## CERTIFICATE OF TITLE FOR A VEHICLE

| TITLE NO. | VEHICLE IDENTIFICATION NUMBER | TRANS CODE | DATE ISSUED |
|---|---|---|---|
| 102470193 | 5TFRY5F10FX176527 | 5 | 08/16/2019 |

| YR MODEL | MAKE | MODEL | BODY TYPE | PREV AL TITLE NO. |
|---|---|---|---|---|
| 2015 | TOYOTA | TUNDRA | PK | 50088190 |

| CYL | NEW USED | DEMO | PURCHASE DATE | NO LIENS | COLOR | ODOMETER |
|---|---|---|---|---|---|---|
| 08 | XX | | | 1 | BLACK | 000011 |

NAME(S) AND MAILING ADDRESS OF OWNER(S)
RANEY KIP OR RANEY TAMMY
111 CHRISTOPHER CIRCLE
ATHENS AL 35611

MAIL TO
REDSTONE FEDERAL CREDIT UNION
220 WYNN DRIVE
HUNTSVILLE AL 35893

RESIDENT ADDRESS IF DIFFERENT

LEGEND(S)
ODOMETER: ACTUAL

RELEASE OF LIEN
The holder of Lien on the vehicle described
in this Certificate, does hereby state that the
lien described in said Certificate of Title is
released and discharged.

1ST LIENHOLDER'S NAME, ADDRESS AND LIEN DATE    07/26/2019
REDSTONE FEDERAL CREDIT UNION
220 WYNN DRIVE
HUNTSVILLE AL 35893

First Lienholder

By _____
Signature of Authorized Agent

Date _____

2ND LIENHOLDER'S NAME, ADDRESS AND LIEN DATE

Second Lienholder

By _____
Signature of Authorized Agent

Date _____



This certificate serves as an official document of the Department of Revenue and prima facie evidence that an application for certificate of title has been made for the vehicle described herein and that the vehicle described has been duly recorded with the security interest by liens shown herein, if any. To the United States, this State or any political subdivision.

KEEP IN A


KIP D. RANEY

CONTROL NUMBER
52326946

THIS TITLE



## STATE OF ALABAMA
### DEPARTMENT OF REVENUE

# CERTIFICATE OF TITLE FOR A VEHICLE

| TITLE NO. | VEHICLE IDENTIFICATION NUMBER | TRANS. CODE | DATE ISSUED |
|---|---|---|---|
| 54182168 | 5TFAZ5CN4HX045556 | 01 | 10/18/2017 |

| YR. MODEL | MAKE | MODEL | BODY TYPE | PREV. AL TITLE NO. |
|---|---|---|---|---|
| 2017 | TOYT | TACOMA | PU | |

| CYL | NEW | USED | DEMO | PURCHASE DATE | NO. LIENS | COLOR | ODOMETER |
|---|---|---|---|---|---|---|---|
| 06 | XX | | | 09/16/2017 | 1 | SIL | 000020 |

NAME(S) AND MAILING ADDRESS OF OWNER(S):

RANEY KIP OR RANEY DYLAN
110 CHRISTOPHER CIRCLE
ATHENS AL 35611

MAIL TO:

REDSTONE FEDERAL CREDIT UNION
220 WYNN DR
HUNTSVILLE AL 35893

RESIDENT ADDRESS IF DIFFERENT

LEGEND(S)

ODOMETER READING IS THE ACTUAL MILEAGE

RELEASE OF LIEN
The holder of lien on the vehicle described in this Certificate does hereby state that the lien described in said Certificate of Title is released and discharged.

First Lienholder

By _____
Signature of Authorized Agent

Date _____

1ST LIENHOLDER'S NAME, ADDRESS AND LIEN DATE  **09/16/2017**
REDSTONE FEDERAL CREDIT UNION
220 WYNN DR
HUNTSVILLE AL 35893

2ND LIENHOLDER'S NAME, ADDRESS AND LIEN DATE

Second Lienholder

By _____
Signature of Authorized Agent

Date _____




583
KIP D. RANEY
060

This certificate serves as a Title document, and if title has been made for the vehicle described herein, named on the face hereof has been duly recorded and the security interest by liens, show person if any. Subject to the United States, this State or any political subdivision.

KEEP IN A SAFE

CONTROL NUMBER
49548560

THIS TITLE